Vincenzo ANSELMO, Petitioner,

v.

H. L. HARDIN, District Director of Immigration and Naturalization for 21st Immigration District, 1004 Broad Street, Newark 2, New Jersey, Respondent.

Civ. No. 958–55.

United States District Court
D. New Jersey.

March 7, 1957.

Frank M. Lario, Camden, N. J., for petitioner. Filindo B. Masino, Philadelphia, Pa., of counsel.

Chester Weidenburner, U. S. Atty., Newark, N. J., by Charles H. Nugent, Asst. U. S. Atty., Camden, N. J., for respondent.

MADDEN, District Judge.

This is an action instituted by the petitioner, Vincenzo Anselmo, under the Declaratory Judgment Act, 28 U.S.C.A. § 2201 et seq., and under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., for review of a ruling of the Immigration and Naturalization Service that the petitioner is deportable and is to be deported to his native country, Italy.

This matter, like so many similar to it, has a lengthy history and, unfortunately, a good portion of it must be reviewed here for the sake of clarity. The prime question throughout is the date of the petitioner's entry into this country. Both parties are in agreement that if he

entered, even illegally, before July 1, 1924, he is not deportable, for then he would have acquired a non-deportable alien status under the Immigration Act of 1917;[1] but, if he entered after said date, he would be subject to the Immigration Act of 1924[2] and deportable at any time.

On November 16, 1934, the petitioner filed a Declaration of Intention to be naturalized and therein stated that he was born March 2, 1907, at Palmi, Italy; that on June 19, 1923, he married one Caterina Rizzitano, at Palmi; that of this marriage two daughters were born, Rosaria, January 4, 1924, and Ines Grazia Pasqualina, January 9, 1925; that his last place of residence was Palmi, Italy; and that he arrived in this country at the Port of New York on June 28, 1924 upon the vessel, Giulio Cesare.

Inasmuch as there is no record in the Immigration and Naturalization Service's files of the petitioner having entered this country at the time and place aforementioned, an investigation ensued. As part of this investigation an examination of the petitioner was conducted on May 14, 1936, during which, among other things, he claimed entrance into this country as set forth above and that he had obtained his passport at the Counsel's Office at Messina, Italy. He further claimed his marriage in 1923 and two children born thereof, Rosaria, born in June or July of 1923, and Ines Grazia Pasqualina, born in 1925.

Subsequently, the petitioner was arrested on a deportation warrant, released on bail and afforded a hearing during which he was represented by counsel. At this hearing, the petitioner testified that he was born March 2, 1907, at Palmi, Italy; that he married Caterina Rizzitano on June 19, 1923, at Palmi, Italy; that two children were born of the marriage, Rosaria, born at Palmi, January 4, 1924, and Ines Grazia Pasqualina, born January 9, 1925. He also stated that he

arrived in New York aboard the Giulio Cesare on June 28, 1924, accompanied by his brother, Rasario Anselmo (whose entry at such time and place is recorded).

Also at this hearing, the government produced documents such as birth and marriage certificates, showing dates other than those testified to by petitioner, to refute the petitioner's testimony; and the petitioner produced similar documents to substantiate and corroborate his testimony. However, doubt was cast upon the authenticity of the latter documents by the government. It appears that prior to the administrative hearing the petitioner had submitted these documents to officers of the Immigration and Naturalization Service, who, in turn, had submitted them, through the State Department, to the local authorities in Italy for verification. When returned by the Mayor of Palmi, Italy, the documents contained notes subscribed thereon by the Mayor, as follows:

> "The signature above affixed to this certificate is not my own. It is false. Likewise the seal is not currently used."

As a result of the above hearing and a review, the Board of Review, on November 4, 1938, held that the charge of deportability had been sustained and a warrant issued, on November 15, 1938, for the petitioner's deportation. Thereafter, the petitioner sued out a writ of habeas corpus before this Court and on May 23, 1940, the late John Boyd Avis, honorable and beloved judge of this Court, filed an opinion wherein, inter alia, he said:

> "There is no direct testimony which sustains the position of the respondent (Hughes, then District Director of Immigration). The indirect evidence does not substantially support the finding. It follows that the order of deportation is arbitrary and capricious, and cannot be sus-

1. Immigration Act of 1917, Public Laws, c. 29, 39 Stat. 874.

2. Immigration Act of 1924, Public Laws, c. 190, 43 Stat. 153, [now Immigration and Nationality Act 1952, 8 U.S.C.A. §§ 1181, 1251].

tained under the evidence presently before the court. However a reading of the record indicates that a proper investigation would develop facts upon which to base a determination one way or the other. The writ will be held for a reasonable time and the matter referred to the Department of Labor for further investigation and determination."

The Service now asserts that through some inadvertence it was not appraised of Judge Avis' opinion until July 10, 1941, and by that time conditions had reached such a stage in Italy as a result of the war that further investigation was impossible. On March 24, 1944, Judge Avis having died in the meantime, Judge Forman, likewise of this Court and now its Chief Judge, in view of no additional information being available made the writ absolute. Thereafter, on December 2, 1947, the Commissioner of Immigration and Naturalization cancelled the proceedings without prejudice.

A new deportation proceeding was commenced against the petitioner March 11, 1948 by the issuance of a warrant for arrest of the alien charging that the petitioner was subject to deportation under "The Immigration Act of May 26, 1924, in that, at the time of entry, he was an immigrant not in possession of a valid immigration visa and not exempted from the presentation thereof by said act or regulations made thereunder."

Ensuing the issuance of the new warrant, hearings were held on December 11, 1950, December 11, 1951, February 14, 1952, March 14, 1952 and February 10, 1953. At the last administrative hearing, as a result of the testimony, an additional charge was lodged against the petitioner as grounds for his deportation, namely, that he entered the United States without inspection. Throughout these hearings the petitioner was represented by counsel.

In addition to the incorporation of the record and exhibits of the previous administrative proceedings into the record of these later proceedings, the government presented the following authenticated documents:

First, the birth certificate of the petitioner, Vincenzo Anselmo, born on March 2, 1907, of Pasquale and Rosaria Melluso, at Palmi, Italy.

Second, the birth certificate of the petitioner's wife, Caterina Rizzitano, born on March 2, 1909, of Guiseppe and Maria Grazia Lanzo, at Palmi, Italy.

Third, the certificate of marriage of Vincenzo Anselmo, son of Pasquale and Rosaria Melluso, living at Palmi, single, aged 17, and Caterina Rizzitano, daughter of Guiseppe and Maria Grazia Lanzo, living at Palmi, single, aged 15, at Palmi, Italy, on June 19, 1924.

Fourth, the birth certificate of Rosaria Anselmo, born on August 4, 1925, of Vincenzo and Caterina Rizzitano, at Palmi, Italy.

Fifth, the birth certificate of Ines Pasqualina Graziella Anselmo, born on November 30, 1927, of Vincenzo and Caterina Rizzitano, at Palmi, Italy.

Sixth, a matriculation certificate (No. 8319) showing the military history of Vincenzo Anselmo, son of Pasquale and Rosaria Melluso, born on March 2, 1907, at Palmi, Province of Reggio Calabria, as follows:

"Drafted with the class of 1907, Military District of Reggio Calabria on January 31, 1927. Called to serve in the Armed Forces, arrived April 27, 1927. Sent to the Military Hospital, District of Catanzaro for treatment of general weakness of constitution and deficiency of thoracic perimeter. Released by the hospital on June 10, 1927 because of physical disability.

"No remarks concerning conduct under military service since he gave no active military service. Soldier in the 1907 draft, Military District of Reggio Calabria, must answer the call to arms with the draft of 1908. Served at the Military Hospital of Messina where he performed sedentary duties. Dispensed from the

draft control through circular 504 because resident of foreign country on December 4, 1932."

In support of the petitioner's own testimony, a copy of an affidavit of one Frank Casciari, dated November 7, 1938, was submitted to the hearing officer. It contained a statement to the effect that the affiant had arrived aboard the same vessel with the petitioner and the petitioner's brother, Rosario, at New York, on June 28, 1924.

On July 6, 1953, the Special Inquiry Officer, in what may be termed an opinion or determination consisting of seven pages, made the following findings of fact and conclusions of law:

"Findings of Fact: Upon the basis of all the evidence presented, it is found:

"(1) That the respondent is an alien, a native and citizen of Italy;

"(2) That the respondent last arrived in the United States in an unknown manner, at an unknown port, on an unknown date subsequent to July 1, 1924;

"(3) That the respondent was not admitted to the United States in any non-immigrant classification;

"(4) That the respondent was not in possession of an unexpired immigration visa providing for his arrival into this country for permanent residence;

"(5) That the respondent was not inspected at the time of his arrival.

"Conclusions of Law: Upon the basis of the foregoing findings of fact, it is concluded:

"(1) That under Sections 13 and 14 of the Immigration Act of May 26, 1924, the respondent is subject to deportation in that at the time of entry he was an immigrant not in possession of a valid immigration visa and not exempted from the presentation thereof by said Act or regulations made thereunder;

"(2) That under Section 241(a) (2) of the Immigration and Nationality Act [8 U.S.C.A. § 1251(a) (2)] the respondent is subject to deportation in that he entered the United States without inspection."

An appeal from this determination was taken to the Board of Immigration Appeals on July 15, 1953, and argued by present counsel for the petitioner on August 17, 1953. On October 28, 1954, the Board of Immigration Appeals rendered its decision (consisting of five and one-half pages of reviewing the record) as follows:

"We find that the evidence of record establishes that the respondent (Anselmo) did not enter the United States as claimed by him on June 28, 1924. It is our conclusion that he entered illegally sometime after July 1, 1924. * * * We find that he is subject to deportation on both the warrant charge and the charge lodged at the hearing."

As a result of this decision an order of deportation was issued on November 3, 1954, and precipitated the present action for stay and review. With the completion of the pleadings, the matter was moved for summary judgment upon motion by both the petitioner and the government.

The petitioner urges two principal contentions for this Court's consideration; first, that the opinion of Judge Avis and the order of Judge Forman sustaining the writ of habeas corpus in the previous court proceedings constitutes res judicata and precludes any further hearings or orders of deportation; and, second, that even if the prior proceedings do not constitute res judicata, the government has not established by a preponderance of the evidence in the record that the petitioner is deportable and so the order of deportation is arbitrary and capricious and, consequently, illegal.

On the other hand, the government not only counters these contentions with opposing argument, but, in support of its motion urges a third point, namely, that in reviewing a matter such as this the function of the Court is extremely

limited; that if there is substantial evidence to support the findings of the administrative body and warrant in the law for its action, this Court is not permitted to substitute its judgment for that of the administrative body and its action must be sustained.

Logical disposition in the instant case requires consideration of the question of res judicata first, since a decision on that point favorable to the petitioner would be conclusive of the matter. However, the Court feels that it is well settled that the making absolute of a writ of habeas corpus is no more than a determination at that time that the petitioner is not in custody legally and is to be discharged. It is not a determination upon the merits of a cause and new proceedings may be brought. Colyer v. Skeffington, D.C.Mass.1920, 265 F. 17; reversed on other grounds sub nom., 1 Cir., 1922, 277 F. 129; United States ex rel. Chumura v. Smith, D.C.W.D.N.Y. 1927, 29 F.2d 287; United States ex rel. Waldman v. Tod, 2 Cir., 1923, 289 F. 761; Collins v. Loisel, 1923, 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed. 1062. This becomes more apparent in the present case upon an examination of the record and the wording of the opinion of Judge Avis when he concluded:

"However a reading of the record indicates that a proper investigation would develop facts upon which to base a determination *one way or another.*" (Emphasis supplied)

The new investigation, conducted after the conclusion of the war, has clarified the particulars that disturbed Judge Avis by their absence, for example, for the first time the record of the petitioner's alleged military service in Italy was produced; this, presumably, would remove the skepticism concerning the hearsay evidence introduced by the government on that issue in the previous record. It is to be noted at this juncture that the order of Judge Forman in making the writ of habeas corpus absolute was not a determination of the issue of the petitioner's entry upon the merits, but merely a discharge of the petitioner from custody. Therefore, this Court is of the opinion that the principle of res judicata is not applicable in this particular case.

Next, to consider the second contention of the petitioner, viz. whether there is substantial evidence in the record to warrant the findings of the Special Inquiry Officer. All of the birth and marriage certificates tie into the genealogical line of the petitioner to such an extent when coupled with the location of the town of Palmi, Italy, as to almost foreclose the possibility of mistaken identity. The same is true of the matriculation certificate of the petitioner's military service. Add to this the admissions of the petitioner that he was in Italy when his first child was born and that his wife was four or five months pregnant with the second child when he arrived here; there is sufficient evidence to warrant the findings of the Special Inquiry Officer.

The documentary evidence produced by the government was in the main rebutted solely by the testimony of the petitioner. Such testimony if afforded complete credence could be sufficient to overcome the evidence of the government. But, is it entitled to complete credit? First, the Court acknowledges that it is the province of the administrative body to determine what credit is to be placed upon such testimony, but if it were for this Court's determination, then we would have reluctance in believing the petitioner's assertion that he came here on June 28, 1924, and has remained here since.

There are too many discrepancies and inconsistencies in his story to induce this Court's acceptance. For example; first, not one of the certificates produced show his middle name to be Rosario but he has adopted this name since his arrival in this country on the same vessel with his brother, Rosario, whose arrival is recorded while the petitioner's is not; second, he states that he never served in the army in Italy but the matriculation certificate identifies him with a real certainty; third, in the declaration of intention filled out by the petitioner in 1934 he stated that he arrived by him-

self, that is, not accompanied by anyone; fourth and lastly, throughout the examinations and hearings he stated that he continued to be on good terms with his wife, wrote to her and sent her money regularly and then, suddenly, at the last hearing, as a reason for his leaving Italy, he stated for the first time, that his wife was unfaithful and having a child or children by other men.

While it may not be completely proper for a Court to determine facts from outside or extraneous circumstances, such circumstances may merit consideration and be of assistance when credibility is in question.

The Court, therefore, turns to analyse the two conflicting accounts of events to ascertain the more probable and accurate statement of fact. On the petitioner's side, we have his story that he was born in 1907; that he married in 1923 at the age of 16 to a girl of 14; that his first born arrived in January of 1924; that thereafter his wife became pregnant; and that in June of 1924 with his 15 year old wife pregnant he left her and came to this country upon a proper passport and visa without telling his own brother who was sailing on the same vessel.

On the other hand, the picture presented by the government is that the petitioner was born in 1907, married on June 19, 1924, and became the father of his first child on August 4, 1925, and the father of his second on January 31, 1927; that the petitioner was called for army service, reported on April 27, 1927, and ultimately released on June 10, 1927 because of physical insufficiency but directed to report again with the class of 1908 (presumably in 1928).

Which of the two accounts would be the more likely picture surrounding the leaving of Italy by the petitioner? It seems that the latter account presented by the government is more consistent with the actual occurrence of events, for naturally if the petitioner had been called for future military service it is doubtful that he could have obtained a passport from the Italian Government.

■ In arriving at its decision this Court is aware of its limited scope of inquiry and careful not to extend beyond the same, for as succinctly stated in United States ex rel. Rongetti v. Neelly, 7 Cir., 1953, 207 F.2d 281, 284:

> "Courts will not interfere with administrative determinations unless, upon the record, the proceedings were manifestly unfair, or substantial evidence to support the administrative finding is lacking, or error of law has been committed, or the evidence reflects a manifest abuse of discretion."

For a recent application of this principle, see DaCruz v. Holland, 3 Cir., 241 F.2d 118.

■ From the record here there is substantial evidence to warrant the findings of the administrative body and the action will be dismissed with prejudice.

While the Court is mindful of the separation of the three branches of government and that the judicial branch is not to impinge its ideas upon the executive branch or vice versa, nonetheless it reaches its decision in this matter without enthusiasm and with a possible reluctance. Here is a man now approaching 50 years of age who has lived in this country for approximately 25 years without a criminal record, sustaining himself in an industrious way, and in most respects conducting himself in the law-abiding manner of a good resident if not a good citizen. The executive branch of the government desires to deport him while at the same time the same branch of the government, and properly so, is bringing in the persecuted peoples of Europe by the thousands. It makes it difficult for some to understand.

Counsel will prepare an appropriate order which will contain a provision that no warrant shall issue for a period of twenty days to allow counsel for petitioner time to make application for a stay from the Court of Appeals.