Vincenzo ANSELMO, Appellant,

v.

H. L. HARDIN, District Director of Immigration and Naturalization for the 21st Immigration District.

No. 12259.

United States Court of Appeals
Third Circuit.

Argued Nov. 8, 1957.

Decided Feb. 25, 1958.

Filindo B. Masino, Philadelphia, Pa. (Frank M. Lario, Camden, N. J., on the brief), for appellant.

Charles H. Nugent, Asst. U. S. Atty., Newark, N. J. (Chester A. Weidenburner, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before MARIS, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

Does the doctrine of res judicata apply with respect to a judgment of a United States district court granting a writ of habeas corpus in a deportation proceeding which was premised on the judicial determination that the rights of the alien were governed by the Immigration Act of 1917 and that he was not deportable under its provisions?

That issue is presented by this appeal by Vincenzo Anselmo from the judgment of the United States District Court for the District of New Jersey dismissing his action for a declaratory judgment under the Federal Declaratory Judgment Act [1] and for review under the Administrative Procedure Act,[2] with respect to a ruling of the Immigration and Naturalization Service that he is deportable and as such is to be deported to his native country, Italy.

Necessary to the consideration of this appeal are the following facts:

On November 15, 1938, the Secretary of Labor issued a Warrant for Anselmo's deportation to Italy pursuant to his determination that Anselmo had entered the United States at New York "about 1930" and "that at the time of his entry he was not in possession of an unexpired immigration visa" and was accordingly deportable under the Immigration Act of 1924.[3]

Anselmo, in his Declaration of Intention to be naturalized, filed on November 16, 1934, had stated that he had arrived at New York on June 28, 1924, and on examination by the Immigration Service on May 14, 1936 and at subsequent hearings, conducted by the Service, he made the same contention.

The time of Anselmo's entry into the United States was the critical and dispositive factor in the 1938 deportation proceedings inasmuch as July 1, 1924 was the effective date of the Immigration Act of 1924 and had Anselmo entered prior to that date he would have attained a non-deportable status under the provisions of Section 19 of the Immigration Act of 1917,[4] which established a five-year statute of limitations (the deportation proceedings were not commenced until January 17, 1938, when the Warrant For Arrest of Alien was issued).

1. 28 U.S.C. § 2201 et seq.

2. 5 U.S.C.A. § 1001 et seq.

3. 8 U.S.C. § 201 et seq. (1940 ed.) ; Immigration Act of 1924, May 26, 1924, P.L., c. 190, 43 Stat. 153 et seq.

4. 8 U.S.C. § 155 (1926 ed.) ; Sec. 19 of the Immigration Act of February 5, 1917, 39 Stat. 889.

Subsequent to the issuance of the deportation warrant Anselmo, on March 2, 1939, filed a petition for a writ of habeas corpus in the United States District Court for the District of New Jersey. The late Judge Avis of that Court, following hearing, in a Memorandum Opinion dated May 23, 1940, made these findings:

" 'There is no direct testimony which sustains the position of the respondent [Secretary of Labor]. The indirect evidence does not substantially support the finding. It follows that the order of deportation is arbitrary and capricious, and cannot be sustained under the evidence presently before the court. However, a reading of the record indicates that a proper investigation would develop facts upon which to base a determination one way or the other. The writ will be held for a reasonable time and the matter referred to the Department of Labor for further investigation and determination.' " [See 150 F.Supp. 294.]

Apparently no further investigation was made by the immigration authorities because, as Government counsel asserts in his brief here "Due to the conditions in Italy as a result of the war, further investigation at that time was impossible."

On March 24, 1944, Chief Judge Forman of the District Court for the District of New Jersey (Judge Avis having died), upon application of Anselmo's counsel, after hearing, entered an order granting the writ of habeas corpus, and directed that Anselmo be discharged from custody. The Government did not appear in opposition to the writ, and, it may be noted parenthetically that the record discloses that "There appears on this order a pencil notation that the Assistant United States Attorney, Rossbach, had no objection to the entry of the order."

No appeal was taken by the Government from the order of March 24, 1944. In October, 1947, Chief Judge Forman denied the Government's request to re-open the habeas corpus proceeding.

Thereafter, on December 2, 1947, the Acting Commissioner of Immigration filed a Motion with the Board of Immigration Appeals "* * * that the outstanding order of deportation be withdrawn and proceedings cancelled without prejudice." On January 16, 1948 in a formal "Opinion of Immigration Board", the Acting Commissioner's Motion was denied. In doing so the Board, in its Opinion, stated:

"It is our opinion that the action of the District Court in granting the writ of habeas corpus and discharging respondent from custody effectively terminated the deportation proceeding. Hence, there is nothing before us to consider."

A new deportation proceeding was begun on March 11, 1948 by issuance of a Warrant of Arrest based on the identical charge of lack of an unexpired visa set forth in the original Warrant of Arrest of January 17, 1938. Hearings were held in December, 1950, December, 1951, February and March, 1952, and in February, 1953. At the last mentioned hearing the Government added the additional charge that Anselmo had entered the United States without inspection.

On July, 6, 1953, the Special Inquiry Officer found Anselmo deportable on the charges contained in the Warrant of Arrest. On October 28, 1954, the Board of Immigration Appeals denied Anselmo's appeal and thereafter on November 3, 1954, an order of deportation was entered. Anselmo then brought the action below for declaratory judgment and review.

In his petition for declaratory judgment and review Anselmo recited the prior action of the District Court in granting the writ of habeas corpus earlier here detailed and asserted (Par. 13) that accordingly he had "* * * acquired the status of immunity from deportion * * * which status is preserved and protected under the provisions of the Savings Clause contained in Section 405(a) of the Immigration and Nationality Act of 1952 [8 U.S.C.A. § 1101 note]." He further asserted that the second deportion warrant of 1954 was

"arbitrary and capricious" and not sustained by the evidence.

The District Court in granting the Government's motion for summary judgment dismissing Anselmo's petition held (1) " * * * the principle of res judicata is not applicable in this particular case" and (2) " * * * there is substantial evidence to warrant the findings of the administrative body * * *."[5]

It must immediately be noted that we are here focusing our attention on the res judicata phase of the District Court's disposition. Upon review of the record we cannot say that the administrative action was "unsupported by substantial evidence" and "unwarranted by the facts." [6]

Coming now to the issue as to whether the District Court erred in holding that "the principle of res judicata is not applicable in this particular case."

As already noted, the first Warrant For Arrest of Alien, issued January 17, 1938, was premised on the charge that in violation of the Immigration Act of 1924, " * * * at the time of his entry he [Anselmo] was not in possession of an unexpired immigration visa" and the first deportation warrant, issued November 15, 1938, made the same charge in identical terms.

Because of their pertinence to the issue of res judicata these additional facts must be stated:

The second Warrant For Arrest of Alien, issued March 11, 1948, was premised on the charge that in violation of the Act of 1924 " * * * at the time of

entry, he [Anselmo] was an immigrant not in possession of a valid immigration visa and not exempted from the presentation thereof * * *." and the second deportation warrant, issued November 3, 1954, made the same charge in identical terms and added to it that in violation of Sec. 241(a) (2) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1251(a) (2) " * * * he entered the United States without inspection."

With respect to the issue of res judicata these well-settled principles are applicable:

▪ A final judgment by a court of competent jurisdiction is res judicata as to the parties not only as to all matters litigated and determined by such judgment but also as to all relevant issues which could have been presented, but were not.[7]

▪ Specifically, "a *question of fact* or of law *distinctly put in issue and directly determined* * * * cannot afterwards be disputed between the same parties", Frank v. Mangum, 1915, 237 U.S. 309, 334, 35 S.Ct. 582, 590, 59 L.Ed. 969, and where " * * * *the question of priority in time* and right * * * *was directly presented* by the pleadings and evidence and *distinctly dealt with and resolved* in the [prior] opinion" the decree entered pursuant to such opinion is res judicata as to the litigated issue. State of Wyoming v. State of Colorado, 1932, 286 U.S. 494, 507, 52 S.Ct. 621, 626, 76 L.Ed. 1245. (Emphasis supplied.)

---

5. The District Court's opinion is reported at D.C.D.N.J.1957, 150 F.Supp. 293.

6. The Administrative Procedure Act of 1946, c. 324, Sec. 10, 60 Stat. 243, 5 U.S. C.A. § 1009(e).

7. Mr. Justice Frankfurter, in Angel v. Bullington, 1947, 330 U.S. 183, 192–193, 67 S.Ct. 657, 662, 91 L.Ed. 832, stated the rule as follows:

"The doctrine of res judicata reflects the refusal of law to tolerate needless litigation. Litigation is needless if, by fair process, a controversy has once gone through the courts to conclusion. * * *

And it has gone through, *if issues that were or could have been dealt with in an earlier litigation are raised anew between the same parties.*" (Emphasis supplied.)

To the same effect see Commissioner v. Sunnen, 1948, 333 U.S. 591, 597, 68 S. Ct. 715, 92 L.Ed. 898; Jackson v. Irving Trust Co., 1941, 311 U.S. 494, 503, 61 S.Ct. 326, 85 L.Ed. 297; United States v. Oppenheimer, 1916, 242 U.S. 85, 88, 37 S.Ct. 68, 61 L.Ed. 161; United States v. De Angelo, 3 Cir., 1943, 138 F.2d 466, 468.

■ The circumstance that the final judgment on the issue raised was premised on the failure of the losing party to support its position by sufficient evidence does not impair the binding effect of the judgment rendered. Heiser v. Woodruff, 1946, 327 U.S. 726, 735, 66 S.Ct. 853, 90 L.Ed. 970.

■ A judgment in habeas corpus proceedings discharging the petitioner for the writ is res judicata " * * * of the issues of law and fact necessarily involved in that result." Collins v. Loisel, 1923, 262 U.S. 426, 430, 43 S.Ct. 618, 619, 67 L.Ed. 1062.

■ Applying the principles stated we are of the opinion that Judge Madden erred in ruling in the instant case that the prior 1944 judgment granting Anselmo a writ of habeas corpus in the 1938 deportation proceeding did not operate as res judicata with respect to the 1954 deportation action.

The single issue in the habeas corpus proceeding was whether Anselmo's status as to deportation was determinable under the Immigration Act of 1917 or the Immigration Act of 1924. Whether the 1917 Act or the 1924 Act was applicable hinged solely on the factual question as to the date of Anselmo's entry into the United States. If he had entered prior to July 1, 1924, he was not deportable for having entered without an immigration visa because under Section 19 of the 1917 Act[8] there was a five-year statute of limitations with respect to entry without a visa. If he had entered on July 1, 1924, or thereafter, he was deportable under Section 14 of the 1924 Act,[9] which had repealed all of the limitation provisions of Section 19 of the 1917 Act.[10]

The foregoing was placed in sharp focus by Judge Avis in his Memorandum in the habeas corpus proceeding and by Judge Madden in his opinion in the instant case.

Judge Avis, after stating "The determination of the issue [presented by the application for the writ of habeas corpus] depends entirely upon the date when the relator actually entered the United States" said:

"He claims that he arrived * * * on June 28, 1924. Respondent claims that relator did not enter the United States until some time in the year 1930. *If he entered on June 28, 1924 he is not deportable because* of the fact that he resided in the United States for a period of five years after his entry and *his rights are governed by the Act of 1917. If he arrived in the United States after July 1, 1924 his rights are controlled by the 1924 Act and he is liable to deportation at any time."* (Emphasis supplied.)

Judge Madden in his Opinion, D.C. D.N.J.1957, 150 F.Supp. 293, at page 294, stated:

"The prime question throughout is the date of the petitioner's entry into this country. Both parties are in agreement that *if he entered,* even illegally, *before July 1, 1924, he is not deportable,* for then he would have acquired a non-deportable status *under the Immigration Act of 1917;* but *if he entered after said date, he would be subject to the Immigration Act of 1924 and deportable at any time."* (Emphasis supplied.)

It is clear that the judgment in the habeas corpus proceeding was a determination that Anselmo had entered the United State *prior* to July 1, 1924, and that accordingly his status was governed by the provisions of the Immigration Act of 1917 and that being so he could not be deported under the five-year limitation provision of Section 155 of the 1917 Act.

8. See Note 4, supra.

9. 8 U.S.C. Sec. 214 (1940 ed.)

10. Philippides v. Day, 1931, 283 U.S. 48, 51 S.Ct. 358, 75 L.Ed. 833; United States v. Vanbiervliet, 1931, 284 U.S. 590, 52 S.Ct. 132, 76 L.Ed. 509; see also United States v. Prince Line, 2 Cir., 1951, 189 F.2d 386, 389; United States ex rel. Vounas v. Hughes, 3 Cir., 1940, 116 F.2d 171, 174; United States ex rel. Fink v. Reimer, 2 Cir., 1938, 96 F.2d 217.

The 1954 deportation proceeding was premised on the Government's determination that Anselmo had entered the United States *after* July 1, 1924 and that accordingly his status was governed by the provisions of the Immigration and Nationality Act of 1952, and that being so he was deportable under Section 241(a) (2) of that Act.[11]

To avoid the impact of the res judicata doctrine, the Government urges here (1) the habeas corpus judgment was "not a decision on the merits" as to Anselmo's deportability; (2) "even if [it] was a decision on the merits the doctrine of res. judicata or estoppel by judgment does not apply here so as to bar *new* administrative proceedings to determine petitioner's [Anselmo's] deportability, *based on new process and new evidence*"; (3) Anselmo "does not have any status of immunity from deportation" preserved to him under the 1952 Act, and (4) "even assuming, arguendo, that Judge Forman's 1944 Order precluded re-lodging the 'entry without a visa' charge * * * that Order has no effect on the charge * * * that at the time of his entry on a date subsequent to July 1, 1924, he entered without inspection, in violation of the Immigration Act of 1917" making him deportable under Section 241(a) (2) of the 1952 Act.

The contention that the habeas corpus judgment was "not a decision on the merits" does not require extended discussion. The "merits" involved in that judgment were inextricably intertwined —whether he had arrived prior to July 1, 1924 and was thus subject to the 1917 Act or had arrived subsequent to that date and was thus subject to the 1924 Act. Judge Avis flatly ruled, as earlier quoted, "There is no direct testimony which sustains the position of the respondent [Government]. The indirect evidence does not substantially support the finding [that Anselmo had entered the United States subsequent to July 1, 1924]." Further, Judge Avis allowed the Government "a reasonable time" to produce evidence in support of its position and it was only after almost four years in which the Government failed to produce such evidence or to offer any evidence at all, that Judge Forman, following notice, entered judgment granting the habeas corpus writ. In this connection it will be recalled that, as earlier pointed out, the Government did not appear in opposition to the writ in 1944 and it was noted on the record "that the Assistant United States Attorney, Rossbach, had no objection to the entry of the order."

Implicit, of course, in the grant of the habeas corpus judgment was the judicial determination that Anselmo had entered the United States prior to July 1, 1924, and that he was subject to the provisions of the 1917 Act and was not deportable under them.

The Government's second contention that "even if [it] was a decision on the merits, the doctrine of res judicata or estoppel by judgment does not apply here to bar new administrative proceedings * * * based on new process and new evidence" falls of its own weight. Clearly dispositive are the well-settled principles, earlier cited, that "a question of fact or of law distinctly put in issue and directly determined * * * cannot afterwards be disputed between the same parties", and where "the question of priority in time and right * * * was directly presented by the pleadings and evidence and distinctly dealt with and resolved in the [prior] opinion" that the decree entered pursuant to such opinion is res judicata as to the litigated issues. The fact that "*new* administrative proceedings * * * based on *new* process and *new* evidence" were invoked in the 1954 deportation phase cannot avoid the res judicata impact of the habeas corpus judgment. As was pointed out in Heiser v. Woodruff, supra, 327 U.S. at page 735, 66 S.Ct. at page 857, the binding effect of the earlier judgment was " * * * not any the less so * * * because the moving parties fail-

11. 8 U.S.C.A. § 1101 et seq.

ed to support their allegations by evidence."

It is unnecessary to here resolve Anselmo's contention that he has an immunity from deportation preserved to him under the 1952 Act and the Government's third point that he does not because of our view of the applicability of the doctrine of res judicata.

As to the Government's remaining contention that "even assuming, arguendo, that Judge Forman's Order precluded re-lodging the 'entry without a visa' charge * * * that Order has no effect on the charge * * * that at the time of his entry on a date subsequent to July 1, 1924, he [Anselmo] entered without inspection in violation of the Immigration Act of 1917" so as to make him deportable under Section 241(a) (2) of the 1952 Act:

The stated premise of this contention is that "Prior to the enactment of the 1952 Act, the charge of entry without inspection was contained in Section 19 of the Act of February 5, 1917 * * * and had to be brought within three years after entry. But Section 241(a) (2) of the Immigration and Nationality Act of 1952 provides that the charge of entry without inspection may be brought without regard to time limitation. *Whereas Anselmo was not amenable to an entry without inspection charge at the time of his first deportation hearing,* he became subject to that charge under this provision in the 1952 Act during the second deportation proceeding." (Emphasis supplied.)

The Government's stated premise is, colloquially speaking, "shot through with holes", as a matter of law and affords no foundation whatsoever for the contention which it is designed to support.

The Government has consistently maintained throughout the first and second deportation proceedings, and in the habeas corpus action, that Anselmo entered the United States *after* July 1, 1924. In the first deportation proceeding, both in the Warrant of Arrest and

the Warrant of Deportation, it was charged that Anselmo entered "about 1930" and that he was subject to deportation under Section 19 of the 1917 Act because "at the time of his entry he was not in possession of an unexpired visa" as required by the 1924 Act.

At the time of the issuance of the Warrant of Arrest on January 17, 1938, which was the initial step in the first deportation proceeding, Anselmo, had he entered the United States after July 1, 1924, could have been deported for "entry without inspection" and the Government's stated premise that "Anselmo was not amenable to an entry without inspection charge at the time of his first deportation hearing [in February 1938]" is a startling mis-statement of law. The Supreme Court of the United States had twice in 1931, some seven years prior to the institution of the first deportation proceeding, declared that with respect to all aliens entering the United States *after* July 1, 1924 (as charged here by the Government) Section 14 of the 1924 Act had repealed all limitations contained in Section 19 of the 1917 Act.[12]

The Government's injection of the "entry without inspection" charge into the second deportation proceeding in February, 1953—almost five years after they were commenced on March 11, 1948—constitutes an attempt at interposition of the 1952 Act to avoid the effect of the habeas corpus judgment. Its contention that Section 241(d) of the 1952 Act "expressly excepts the charge of deportability for entry without inspection from the application of the 'savings clauses' in Section 405(a)" is tantamount to an assertion in the instant case that the 1952 Act has made inapplicable to deportation proceedings the doctrine of res judicata. We cannot subscribe to such a contention. If we did we would be compelled to consider the constitutionality of the provisions of the 1952 Act relied on by the Government. The cases cited by the Government are inapposite. So are Lehmann v. United States ex rel. Carson, 1957, 353 U.S. 685, 77 S.Ct. 1022,

12. See Note 10, supra.

1 L.Ed.2d 1122, and Mulcahey v. Catalanotte, 1957, 353 U.S. 692, 77 S.Ct. 1025, 1. L.Ed.2d 1127. In the latter two cases there had not been a judgment prior to the deportation proceedings determining the non-deportable status of the alien sought to be deported as there was in the instant case.

In plain terms the Government is seeking here to scrap the doctrine of res judicata as far as its applicability to habeas corpus is concerned. It is attempting to deprive Anselmo of the rule which we stated in United States v. De Angelo, 3 Cir., 1943, 138 F.2d 466, at page 468, namely, a " 'rule of evidence' * * * 'which accords to the accused the right to claim finality with respect to a *fact or group of facts* previously determined in his favor upon a previous trial.' " (Emphasis supplied.) The "fact or group of facts" here determined by the habeas corpus judgment was Anselmo's entry into the United States prior to July 1, 1924, and the applicability of the provisions of the 1917 Act under which he was not deportable. The cases are legion that, as earlier stated, a judgment in habeas corpus proceedings discharging the petitioner for the writ is res judicata. To Collins v. Loisel, supra, may be added the early case of United States v. Chung Shee, 9 Cir., 1896, 76 F. 951, 956, a deportation proceeding; Harris v. Biszkowicz, 8 Cir., 1939, 100

F.2d 854, also a deportation case; and the recent case of In re Bailleaux, 1956, 47 Cal.2d 258, 302 P.2d 801, 802, 803. See also Cruz-Sanchez v. Robinson, D.C. S.D.Cal.1955, 136 F.Supp. 52, affirmed 9 Cir., 1957, 249 F.2d 771.

Pertinent to the instant case is the observation made in Heikkila v. Barber, 1953, 345 U.S. 229, at page 237, 73 S.Ct. 603, at page 607, 97 L.Ed. 972:

> "Congress may well have thought that habeas corpus, despite its apparent inconvenience to the alien, should be the exclusive remedy in these cases [deportation] *in order to minimize opportunities for repetitious litigation* and consequent delays * * *." (Emphasis supplied.)

The doctrine of res judicata comprehends the particular matter decided and here, the habeas corpus judgment having determined that Anselmo entered prior to July 1, 1924 and that his status was governed by the 1917 Act, the doctrine should have been applied by the District Court and its error in failing to do so requires reversal of its judgment of dismissal of Anselmo's action for declaratory judgment.

For the reasons stated the judgment of the District Court will be reversed and the cause remanded with directions to proceed in accordance with this opinion.[13]

---

13. Although extraneous to the issues presented in this appeal we cannot refrain from commenting that the Government might well have unsheathed the sword of its might in a worthier cause than that presented here. We are prompted to do so by the observation made by Judge Madden in his opinion at page 298 of 150 F.Supp.:

"Here is a man now *approaching 50* years of age who has lived in this country for approximately 25 years without a criminal record, sustaining himself in an industrious way, and in most respects conducting himself in the law-abiding manner of a good resident if not a good citizen. The executive branch of the government desires to deport him while at the same time the same branch of the government, and properly so, is bringing in the persecuted peoples of Europe by the thousands. It makes it difficult for some to understand."