VICTORIA and MANUELA BOLKER or WALKER, Petitioners, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, FEDERICO TILÉN, JUDGE, Respondent; FRANCISCO and JOSÉ SOSA RODRÍGUEZ, ET AL., Interveners.

No. 2280.   Resubmitted April 14, 1961.—Decided May 31, 1961.

*B. Sánchez Castaño* and *R. Rivera Cervera* for petitioners. *Vicente Géigel Polanco* for interveners.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Manuel Sosa Gil died on February 23, 1897 and was succeeded by his six legitimate children as testamentary heirs, to wit: José Encarnación, Valentina, Domingo, José, Leocadio, and Pedro Sosa Cruz, and by his grandchildren, Marcelina, Julio, Pedro, and Emilia Sosa, and María Antonia, Domingo, Francisca, Concepción, and Inés Araújo Sosa, in representation of his predeceased son and daughter Fernando and Emilia Sosa Cruz.

The present complaint, on revendication of real property, nullity of deeds, and compensation for damages, was filed by several grandsons and granddaughters of Manuel Sosa Gil, named Manuel, Eusebio, Georgina, Pedro, Francisca, Agripina, Amparo, and Eladio Sosa Rodríguez,[1] Evangelista Sosa González,[2] María Antonia Sosa Pérez,[3] Luis Medero Sosa,[4] and Francisco and José Sosa Rodríguez.[5] Victoria Bolker or Walker and her daughter Manuela Bolker or Walker Velázquez,[6] were included as defendants.

The main purpose of the action is the revendication of a property known as Estancia Canovanillas [7] which appears recorded in the Registry of Property of Río Piedras in favor of petitioner Victoria Bolker, and for that purpose the following is substantially alleged: that on February 24, 1895 Manuel Sosa Gil borrowed the sum of 2,000 dollars from José Ignacio Arzuaga, and as a security for said amount conveyed the above-mentioned property by a deed of sale; that thereafter, Sosa paid said sum to Arzuaga, it being agreed between them that the sale would be left without effect, and Arzuaga binding himself to execute the corresponding conveyance deed in favor of Sosa; that although Arzuaga recognized this obligation in the open will which he executed on May 24, 1895 before Notary Leandro Lara Tomé, Pedro Arzuaga, as José Ignacio Arzuaga's attorney-in-fact and Francisco Yereguí conspired to deprive the heirs of Manuel Sosa Gil of the above-mentioned property, and to that effect, Pedro Arzuaga, in his

---

[1] Sons and daughters of Pedro Sosa Cruz.

[2] Son of Encarnación Sosa Cruz.

[3] Daughter of Leocadio Sosa Cruz.

[4] Son of Valentina Sosa Cruz.

[5] Sons of José Sosa Cruz.

[6] Since the writ of certiorari was issued at the request of these two defendants, it is not necessary to refer to the other persons who were included as parties.

[7] Said property is described in the complaint, as well as in its first entry appearing in the Registry of Property, as having an area of 171.50 cuerdas. In a certificate of the Registrar of Property of Río Piedras, which is attached to the record, it appears that the Commonwealth condemned a parcel of land of 4.30008 cuerdas.

afore-mentioned representative capacity, appeared in order to sell the above-mentioned property to Yereguí; that thereafter Yereguí donated the property to defendant Victoria Bolker, his cook, with whom he had had several children; that this last transaction appeared to have been made for a consideration of $10,000 which the vendor acknowledged having received prior to the execution of the deed, but that actually said transaction was simulated because no price whatsoever was involved; that when Manuel Sosa Gil died, his executor Francisco Yereguí divided the property left by the deceased, omitting in the inventory the estate Canovanillas and stated that he had no other properties, although he knew, because of his relation with Sosa and José Ignacio Arzuaga, that Sosa was the owner of said property; that "according to plaintiffs' best information and belief," Yereguí informed defendant Victoria Bolker of the illegal manner in which he had acquired said property and warned her that the real owners would file suits claiming the title, and he advised her never to sell the same; that under these circumstances said defendant has never possessed the property in question as owner "not only because she had not paid any sum whatsoever for it but also because of Yereguí's warning when conveying the property to her"; that the conveyance made in favor of Victoria Bolker was executed in order to allege that the latter was a third party protected by law and thus prevent plaintiffs' claims, and that "according to plaintiffs' best information and belief," defendant Victoria Bolker had expressly recognized during the entire period she has been in the material possession of the property, the right of its real owners, that is, of the heirs of Manuel Sosa

---

In the complaint the property is described as follows:

"RURAL: estate known as 'Canovanillas' located in the Canovanillas Ward in the jurisdiction of Carolina, Puerto Rico, composed of 171.5 cuerdas, equivalent to 66 hectares, 1 are and 16 centiares, with a zinc-roofed frame house, 10 meters long by 10 meters deep, bounded on the North by the Río Grande de Loíza; on the South by land belonging to the heirs of Francisco Barreto; on the West by land belonging to Josefa Cabrera and Lorenzo Bablat; and on the East by land belonging to Epifanio Vizcarrondo."

y Gil, and has equally admitted that she is estopped from selling said property because its original title is void.

"Since a genuine controversy of facts does not exist," defendants Victoria and Manuela Bolker requested that a summary judgment be rendered dismissing the complaint on the following grounds:

1. The action of revendication sought to be filed is barred pursuant to the provisions of § 1863 of the Civil Code (31 L.P.R.A. § 5293) because more than thirty (30) years elapsed since plaintiffs' ancestor alienated the title, possession and ownership of the property involved in the action.

2. Defendant Victoria Bolker has acquired the property referred to in the suit by extraordinary acquisitive prescription.

3. The subsidiary action brought for damages is barred pursuant to the provisions of § 1864 of the Civil Code (31 L.P.R.A. § 5294).

4. Plaintiffs are estopped from prosecuting the action at bar because it is res judicata between the parties by virtue of the judgments rendered by the former District Court of San Juan in civil cases Nos. 427, 1334, and 3337.

5. Said defendants are third-party mortgagees protected by the provisions of §§ 27 and 34 of the Mortgage Law (30 L.P.R.A. §§ 52 and 59). Certificates issued by the Registry of Property of Río Piedras of the record sheet of the property and by the Office of the Clerk of the Superior Court, San Juan Part, containing a literal copy of the three judgments which are invoked for the purpose of the defense of res judicata, and of a sworn statement of defendant Victoria Bolker, are attached to the motion.

On November 29, 1955 the Superior Court, San Juan Part, rendered judgment setting aside the summary judgment since "from the opposition . . . there arises that a genuine controversy of facts exists in this case which should be dilucidated in a plenary suit. . . ." Subsequently, and after a motion for reconsideration was filed by defendant party, the court rendered judgment dismissing the complaint "due to the extinctive prescription of the action." On May 4, 1956 the court once more reconsidered and rendered judgment denying a motion for summary judgment because the

latter believed to be bound by a statement contained in the concurring opinion rendered in *Flores* v. *Rodríguez*, 77 P.R.R. 682 (1954) to the effect that an action of revendication is not barred. To review the above-mentioned decision we issued a writ of certiorari.

From our study of the motion for summary judgment and the evidence attached thereto, as well as of the motion of opposition and the evidence adduced by the plaintiff, we must set aside the decision rendered by the Superior Court and instead render judgment dismissing the complaint on the ground that the plea of res judicata [8] filed by defendants lies. We find it unnecessary in view of our conclusion to discuss the other grounds raised by defendant.

■ The defense of res judicata was not predicated exclusively on the pleadings, but rather the defendant petitioner attached to her motion a certificate from the Office of the Clerk of the Superior Court, San Juan Part, wherein the judgments rendered in cases Nos. 427, 1334, and 3337 of the former District Court of San Juan were literally transcribed and also set forth that it was based, among other things, on the record of said cases kept in the files of this Court. On the other hand, plaintiffs, in their motion of opposition, expressly requested the trial court to take judicial notice of the record of one of said suits and they copied in their opposition certain parts of the opinion delivered in case No. 1334. The situation before us is, therefore, clearly distinguishable from that considered by us in *Colón* v. *San Patricio Corporation*, 81 P.R.R. 236, 263–65 (1959).[9]

---

[8] In fairness to the trial court, we wish to set forth that from an examination of the decisions which it rendered in connection with the motion for summary judgment, it is clear that the parties did not insist in, and the trial court did not consider, the plea of res judicata raised by the defendant, and it only passed judgment on the prescription of the action of revendication.

[9] On May 19, 1961 we entered an order directing the Office of the Clerk of the Superior Court, San Juan Part, to send the records of the afore-mentioned cases.

The plea of res judicata appears in our Civil Code in the chapter regarding proof of obligations, and specifically in the section regarding presumptions. In effect, § 1204 of the Civil Code (31 L.P.R.A. § 3343) provides that:

"  . . . . . .

"Only a judgment obtained in a suit for revision shall be effective against the presumption of the truth of the res adjudicata.(

"In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

"  . . . . . .

"It is understood that there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same."

Manresa explains that it is in the first two titles of the fourth book that the rules and matter constituting the general part of Civil Law are contained, and he adds that "For this reason this chapter is not limited to the proof of the obligations, but it embraces and regulates the problem of the proof in its substantive aspect insofar as applicable to all kinds of juridical questions which might arise between the parties; because an effect of the foregoing is that anyone who claims a right, partakes, under the aspect of the evidence, of certain characteristics of creditor, and in all those who are compelled to comply with a duty, there is, in the same sense, something of a debtor.[10]

As Borell and Soler indicate,[11] it is necessary to distinguish between the two effects produced by the judgments: "one positive, which consists in its execution, and another negative, that is, the *impossibility of reproducing the controversy*. The

---

[10] VIII–II, Manresa, *Código Civil Español* 1, 2 (Madrid, 1950 ed.).
[11] I—*Derecho Civil Español* 593 (Barcelona, 1955 ed.).

first effect gives rise to the *actio judicati*, and the second to the *exceptio rei judicatae*. The action of res judicata has as its purpose the demand to comply with judgment, and the defense of res judicata precludes the reproduction of the question adjudicated, a new suit being instituted on the same matter by those who filed the first one."

As far as procedure is concerned, Rule 6.3 of the Rules of Civil Procedure of 1958, equivalent to Rule 8(c) of 1943, refers to res judicata as one of the affirmative defenses available to defendant, a provision which is complemented by Rule 7.5 of 1958, equivalent to Rule 9(e) of 1943, which prescribes the manner of alleging the existence of a judgment.[12]

In order that the plea of res judicata may be valid, the concurrence of four identities is necessary: two objectives— thing and cause; *Aqueduct and Sewer Authority* v. *Reyes*, 77 P.R.R. 10, 14–16 (1954); *Silva* v. *John Doe*, 75 P.R.R. 198, 202 (1953); *Vidal* v. *Monagas*, 66 P.R.R. 588 (1946); *Insular Board of Elections* v. *District Court*, 63 P.R.R. 786 (1944); Judgment No. 61 of the Supreme Court of Spain of March 20, 1956 III–55 (*Jur. Civ.* 726); and two subjective —persons and their representatives. *Camacho* v. *Catholic Church*, 72 P.R.R. 332 (1951); *Ex parte Soto*, 71 P.R.R. 511 (1950); *Municipality* v. *Ríos*, 61 P.R.R. 98, 101 (1942); *De León* v. *Colón*, 42 P.R.R. 21 (1931). Besides, the judgment invoked must be final and unappealable (*firme*) for against the presumption of res judicata "only the judgment obtained in a review suit is operative," and the court which rendered the same must have acted with jurisdiction, *Tartak* v. *District Court and Cruz, Int.*, 74 P.R.R. 805 (1953); *Sucrs. de Huertas González, S. en C.* v. *Díaz*, 72 P.R.R. 501,

---

[12] See, also, §§ 126 and 421 to 424 of the Code of Civil Procedure (32 L.P.R.A. §§ 686 and 1793 to 1796). Rule 11.1 of 1958, equivalent to 13(a) of 1943, refers to a defense of res judicata in relation to the pleading of a compulsory counterclaim. *González* v. *Agostini*, 79 P.R.R. 481 (1956); *Sastre* v. *Cabrera*, 75 P.R.R. 1 (1953). Rule 39.1(a) refers to the defense of res judicata when a claim has been dismissed in more than one occasion. See, *Res Judicata-Two Dismissal Rule*, 65 A.L.R.2d 642 (1959).

504 (1951) ; *Muñoz* v. *Pardo*, 68 P.R.R. 569 (1948) ; *People* v. *López*, 67 P.R.R. 732 (1947) ; *Res judicata effect of judgment dismissing action, or otherwise denying relief, for lack of jurisdiction or venue*, 49 A.L.R.2d 1036 (1956) ; although the judgment was obtained in default, *Rosado* v. *Registrar* 71 P.R.R. 516 (1950) ; *Doctrine of res judicata as applied to judgments by default*, 128 A.L.R. 472 (1940) ; or in case of a consent decree, *Lebrón* v. *P. R. Ry. Lt. and P. Co.*, 78 P.R.R. 650, 660 (1955) ; *Consent judgment as res judicata*, 2 A.L.R.2d 514 (1948). Of course a demurrer based on the ground of res judicata does not lie where the judgment has been procured by fraud, *Aybar* v. *Vara*, 51 P.R.R. 182 (1937) or the action was dismissed because it was prematurely brought, *Fels* v. *Biascoechea*, 77 P.R.R. 644 (1954) ; *Chabrán* v. *Méndez*, 74 P.R.R. 719 (1953). The same doctrine prevails in Spain and it has been repeatedly held that "a judgment which does not involve a decision as to the essence of the actual suit, and which abstains from taking cognizance of the question in issue due to a purely formal aspect, does not produce an exception of res judicata." Judgments of February 23, 1956 (III-64 *Jur. Civ.* 1411) ; June 13, 1951 (III-35 *Jur. Civ.* 251) ; June 21, 1946 (III-15 *Jur. Civ.* 281). Hence, a distinction has been made between the alleged res judicata in the formal sense—when the judge in the first suit did not consider plaintiffs' claims, limiting himself to dismissing the action for purely formal defects—and in the material sense—when the court decides the question raised on the merits. (Judgments of July 12, 1951, (III-35 *Jur. Civ.* 818) ; and October 13, 1952, (III-40 *Jur. Civ.* 69.)

■ These general principles having been established, we must examine the facts of the afore-mentioned suits in order to determine whether in effect there exists the most perfect identity between the things, causes, the litigants and their capacity as such. We must set forth that, although it

does not appear affirmatively from the certificate issued by the Office of the Clerk of the Superior Court, San Juan Part, the judgments invoked are final (*firmes*). The jurisdiction of the court to render them has not been challenged either, and the contrary does not appear from our examination thereof. Let us see.

## Suit No. 427

*Heirs of Manuel Sosa Gil v. Ignacio Arzuaga e Izaguirre et al..*

This action, which was entitled nullity of deeds, revendication of real property, and compensation for damages, commenced on November 29, 1905 by José, Leocadio, Pedro, and Valentina Sosa Cruz, as heirs of Manuel Sosa Gil, all brothers and sisters, against Ignacio Arzuaga, Francisco Yereguí, and Victoria Bolker. Everything related to the sale transaction between Sosa and Arzuaga, to which we have previously referred, was set forth therein, the declaration contained in the will executed by Ignacio Arzuaga, wherein he acknowledged that the title of the estate Canovanillas belonged to Sosa; that in the will executed by Sosa on April 13, 1896 the latter stated that "at present he does not possess any property whatsoever, but in case any should appear at his death," he instructed that certain debts and legacies be paid, and designated as his sole and universal heirs, his afore-mentioned sons and daughters and grandchildren, he designated as his executor, in the first place, Ignacio Arzuaga, and in the second place, Francisco Yereguí; that Yereguí divided the estate of the deceased upon Sosa's death and that plaintiffs, believing in the good faith of the executor, accepted the afore-mentioned division and did not make any claims until 1904, when learning of the declaration made by Arzuaga in his will, they demanded from Yereguí the return of the property; that Yereguí donated the property to Victoria Bolker, with whom he had lived for some years and had had three natural children, although the transaction was made to appear as a sale; that Pedro Arzuaga, attorney-in-fact of Ignacio Arzuaga, knew that the property in question belonged to the heirs of Sosa, and so did

Francisco Yereguí. They finally requested that all the con-veyance deeds be declared void, including the sale in favor of Victoria Bolker, and that defendants be ordered to deliver the property and the fruits yielded, and that in the event it did not lie, to pay a definite amount for the value of the property, interests and compensation for damages.

The corresponding trial having been held, judgment was rendered on October 22, 1906, which textually copied reads as follows:

"On September 25, 1906, this case having been called for trial according to the docket, and the parties having announced that they were ready therefor, plaintiff proceeded to present his oral and documentary evidence; after which defendants also submitted theirs.

"And the court, taking into account the allegations, all the evidence and the arguments of the attorneys, as well as the facts presented, decides that the facts and the law are in favor of defendants and against plaintiffs, whose claim should be and is hereby dismissed, with the costs; and consequently, defend-ants' counterclaim is set aside. The clerk shall enter a judgment according to this decision."

### Suit No. 1334
### Marcelino Sosa et al. v. Ignacio Arzuaga Izaguirre et al.

On February 23, 1907, several grandchildren of Manuel Sosa Gil, to wit, Marcelina, Pedro, and Emilia Sosa (sons and daughters of Fernando Sosa Cruz); Bruno and Evangelista Sosa González [13] (sons of José Encarnación Sosa Cruz): María Antonia, Domingo, Francisca, Concepción and Inés Araújo Sosa (sons and daughters of Eladia Sosa Cruz), brought a suit on nullity of deeds, revendication of real property, and

---

[13] We wish to state that the name of Evangelista Sosa González does not appear in the complaint, but in the opinion rendered it is stated that the complaint was brought, among others, by "Bruno Sosa and another whose name has not been set forth in the title of the complaint, as heirs of José Encarnación Sosa Cruz." An examination of the pleadings in case No. 3337 and of the complaint at bar, reveals that this heir of José Encarnación Sosa Cruz, whose name was omitted, is none other than Evangelista Sosa González.

compensation for damages against Ignacio Arzuaga, Francisco Yereguí, and Victoria Bolker. Reference was made in the complaint to Sosa's and Arzuaga's sale, and it was alleged that said sale was null and void due to the statement and confession made by the latter in the will which he executed; and in general, allegations on the conveyances made of the estate Canovanillas and to which we have previously referred were reproduced. It was alleged, also, that in the deed of partition of the estate left at Sosa's death, plaintiffs Emilia Sosa Medero and the Araújo Sosa brothers and sisters, who were minors at the time when the deed of partition was executed, had not appeared in person or through the representation of legal counsel.

On June 26, 1908 judgment was rendered dismissing the complaint. As far as defendant Victoria Bolker is concerned, it was specifically stated in the opinion rendered that:

"But even if all those nullities should be appropriate, since the property is now in the possession and control of Victoria Bolker, she *is a third-party against whom revendication is not allowed* because since her title is recorded in the Registry of Property, she is protected by the Mortgage Law since she had no intervention in the acts and contracts alleged to be void, nor do the nullities alleged appear in the books of the Registry of Property.

"We understand, from the result of the evidence introduced, that Victoria Bolker did not buy the estate 'Canovanillas' and that that consideration of obligation is false but as another real consideration exists, which is the donation, that contract always remains valid without it being important *for her right as third party* whether she acquired by considerable value or by lucrative title, inasmuch as the Mortgage Law in force makes no distinction between either title as to third parties, for it eliminated the limitation which the former law provided for titles acquired by valuable consideration.

"Under such conditions, the afore-mentioned contracts not being void nor voidable and plaintiffs not being able to revendicate the estate 'Canovanillas' now, they shall be able to bring an action for damages against Ignacio Arzuaga because their attorney-in-fact Pedro Arzuaga disposed of and alienated a

property which did not belong to him, but since said action for damages is personal and said defendant does not live in this Island and neither has he been personally summoned nor may be sued before the courts of the Island, without it being an obstacle to them that he has appeared to defend himself since he did so regarding the real actions and as to that personal one he alleged the court's lack of jurisdiction."

Having appealed from said judgment, this Court dismissed the appeal for noncompliance with § 50 of the Rules of the Supreme Court, *Sosa* v. *Arzuaga*, 14 P.R.R. 859 (1908).

*Suit No. 3337*

*Valentina Sosa Cruz et al.* v. *Ignacio Arzuaga Izaguirre et al.*

On October 21, 1909 a new action is brought which is entitled revendication of real property, nullity of deeds and compensation for damages. There appeared as plaintiffs Valentín, José, Leocadio, and Pedro Sosa Cruz, sons of Manuel Sosa Gil, and several of his grandchildren and great-grandchildren, to wit, Marcelina, Julio, Pedro, Faustino, and Emilia Sosa (sons and daughters of Fernando Sosa Cruz); José, Elisa, and Carmen Baquero Sosa (grandchildren of Fernando Sosa Cruz, sons and daughters of his daughter Segunda); María Antonia, Domingo, Francisca, Concepción, and Inés Araújo-Sosa (sons and daughters of Emilia Sosa Cruz); and Bruno and Evangelista Sosa (sons of José Encarnación Sosa Cruz). Ignacio Arzuaga, Pedro Arzuaga, Francisco Yereguí, and Victoria Bolker were included as defendants. In the complaint the same facts as in the former suits, were more or less alleged and it was set forth, further, that the defendants had perfect knowledge of the fact that the property belonged to the heirs of Manuel Sosa Gil, and that in carrying out the transactions for the liquidation "they did so fully aware that they were acting wrongly, and the four of them having come to an agreement, voluntarily and maliciously deprived plaintiffs of their legitimate rights corresponding to them in the above-mentioned property, conveying the same to Victoria Bolker in order to allege thereafter that she was a third party, thereby impairing plaintiffs' claim."

This complaint was demurred to, and by judgment of January 4, 1910, it was dismissed. The complaint was amended on February 2 of said year, and again demurred to and dismissed. The order of dismissal was reversed by this Court in *Sosa et al.* v. *Arzuaga et al.*, 17 P.R.R. 1042 (1911). By motion of December 7, 1914 plaintiffs appeared and stated that "they wish to desist of their action insofar as it is directed against defendant Victoria Bolker and continue it only on the count for damages against the other defendant."[14] It was thus decreed by the Court on December 9, "without prejudice." Subsequently, another amended complaint was filed exclusively against the heirs of Ignacio Arzuaga, in an action for damages. On November 22, 1920 judgment was rendered ordering the dismissal of this suit on the ground of abandonment.

It is convenient to point out that we may not give any value whatsoever to the judgment of dismissal rendered in suit No. 3337 (No. 329 of the Second Section) in order to establish the defense of res judicata. The general rule is that, in the absence of a statutory provision or rule of procedure, a judgment dismissing a complaint for abandonment or want of prosecution does not estop plaintiff from prosecuting another suit on the same cause. This proposition is derived from the general principles which requires adjudication upon the merits in order that the defense of res judicata shall prosper. *Capella* v. *Carreras*, 57 P.R.R. 250 (1940); *Dismissal as Res Judicata*, 54 A.L.R.2d 473, 501 (1957); *cf. Antonio Roig Sucrs.* v. *District Court*, 66 P.R.R. 424 (1946); *Reyes* v. *Reyes*, 76 P.R.R. 266, 277 (1954). Since the judgment referred to was rendered before September 1, 1943, the provisions of Rule 41 (*b*) of 1943 and of Rule 39.2 of 1958,[15]

---

[14] Most probably this voluntary dismissal was due to the decision in the former suit as to the character of third party mortgagee of said defendant.

[15] Said rules provide insofar as pertinent:

Rule 41 (*b*): "For failure of the plaintiff to prosecute . . . a defendant may move for dismissal of an action or of any claim against him. . . Un-

are not applicable. *Meléndez* v. *Cividanes*, 63 P.R.R. 4, 13 (1944) ; *Berdecía* v. *Tyrell*, per curiam, decided on April 22, 1956. On the other hand, the judgment invoked was rendered in relation to the second amended complaint presented by plaintiff and which was limited to claiming damages from the heirs of Ignacio Arzuaga. Even though Victoria Bolker was originally included as defendant party, the action was dismissed as to her, and the court ordered the dismissal "without prejudice". See, *Albizu* v. *Royal Bank of Canada*, 46 P.R.R. 487 (1934) ; *Capella* v. *Carreras*, *supra*; cf. *Estapé* v. *Rocafort*, 2 S.T.S. 252, 270 (1901) ; *Judgment "without prejudice" res judicata*, 149 A.L.R. 553, 583 (1944).

However, a light examination of the facts involved in suits Nos. 427 and 1334 will reveal that plaintiffs are estopped from prosecuting the action at bar on the ground of res judicata as to the issues raised. The object of all the complaints is the same one, that is, revendication of the estate called Canovanillas,[16] and the grounds for requesting the nullity of the title which is recorded in the name of Victoria Bolker are the same ones that have been alleged ever since the heirs of Manuel Sosa Gil undertook their long judicial pilgrimage. Even if the alleged grounds for nullity would have been different, where the final object of the action is the same, plaintiffs can not prevail. *Cintrón* v. *Yabucoa Sugar Co.*, 54

---

less the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits."

Rule 39.2: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. . . Unless the court in its order for dismissal otherwise specifies, a dismissal under Rule 39.2 and any dismissal, other than a dismissal for lack of jurisdiction or failure to join an indispensable party, operates as an adjudication upon the merits."

[16] The description of the property in every suit including the one at bar, is substantially the same. Except for certain differences in the alleged area and for a certain building located therein, the rest of the description is identical, especially insofar as it refers to the identification of the boundaries. On the other hand, the reference as to its inscription in the registry, when recorded, is the same.

P.R.R. 493 (1939) ; *González v. Méndez et al.*, 15 P.R.R. 682 (1909). And this solution is identical even though the judgments supporting the defense of res judicata are erroneous, *Quintero v. Morales*, 25 P.R.R. 109 (1918) ; *cf. Res Judicata —Matters Concluded—Judgment Under Statute Subsequently Found Unconstitutional is Res Judicata on Issue of Constitutionality*, 73 Harv.L.Rev. 416 (1959) ; *Validity and effect of judgment based upon erroneous view as to constitutionality or validity of statute or ordinance going to the merits*, 16 A.L.R. 517, 532 (1947) ; for as Manresa states, "the res judicata is not grounded in the judge's claim of infallibility, and much less on the intention of hiding his errors,"[17] since the rule of res judicata is one of fundamental and substantial justice, attended by public interest and directed to maintain private peace, *Cintrón v. Yabucoa Sugar Co.*, 54 P.R.R. 493 (1939), and to avoid the perpetuation of judicial controversies, and it is grounded on the convenience of recognizing the dignity to which the judgments of courts are entitled.

As to the identity of the parties, it seems clear that the plaintiffs herein appear in their capacity as plaintiffs in one or both former suits, personally as well as successors in interest of the original litigants. *Araújo v. Arenas*, 60 P.R.R. 277 (1942) ; Judgment No. 147 of February 21, 1957 (III-59 *Jur. Civ.* 1575, 1589). Plaintiffs Manuel, Eusebio, Georgina, Pedro, Francisca, Agripina, Amparo, and Eladio Sosa Rodríguez are bound by the judgment rendered against their father Pedro Sosa Cruz in suit No. 427; plaintiffs Francisco and José Sosa Rodríguez are equally affected by the judgment rendered against their father José Sosa Cruz in the abovementioned suit; and plaintiffs María Antonia Sosa Pérez and Luis Medero Sosa are in the same situation since their parents Leocadio and Valentina Sosa Cruz were parties in said action. As to plaintiff Evangelista Sosa González the defense of res judicata is challengeable because she personally appeared as plaintiff in action No. 1334.

---

[17] Manresa *op. cit.* at 225.

Plaintiffs insist, however, that the judgment rendered on June 26, 1908 in action No. 1334 is null "because it is absurd and lacking grounds . . . on the basis of such findings of fact and conclusions of law." They transcribe in fragments various findings of fact [18] contained in the opinion rendered in said suit.

Nevertheless, the conclusion of law which the Court established, after considering the above-mentioned findings of fact, was that Victoria Bolker was a third party mortgagee protected by law. Even when it could be maintained that such a conclusion is contrary to law, the defense of res judicata may be set up even if the grounds of the judgment are erroneous, provided it was rendered within its competency and in the absence of fraud. *McFadder* v. *McFadder*, 357 P.2d 751 (Kan. 1960); *Mathews* v. *Wolvin*, 266 F.2d 722 (CCA 5, 1959); *Phoenix Ins. Co.* v. *Haney*, 108 So.2d 227 (Miss. 1959); *California Co.* v. *Price*, 99 So.2d 743 (La. 1957); *Gelb* v. *Mazzeo*, 169 N.Y.S.2d 58 (1957).

Under these circumstances the propriety of the summary judgment sought is not subject to discussion, even accepting that a genuine controversy exists as to the facts regarding the

---

[18] The findings referred to by plaintiffs are the following:

(a) "The situation on May, 1895 was that Arzuaga had sold to Sosa Gil for value received the above-mentioned property even though it appeared as belonging to him since he had not executed the corresponding public deed required by law in this case.

(b) ". . . We are not satisfied with defendant's evidence that it was another sale from Sosa Gil to Arzuaga regarding the same property but without the latter delivering the price which was withheld in order to deliver it when the vendor required it . . ."

(c) "Sosa Gil was the owner of 'Canovanillas' at the time of his death and Arzuaga was supposed to execute, for the amount received, the title deed.

(d) "The heirs of Sosa Gil had the right to divide said property among themselves . . . .

(e) "Arzuaga testified that Sosa's property did not belong to him and ordered that it be conveyed again to Sosa through his executor.

(f) "Yereguí was the manager of the estate Buena Vista wherein Sosa Gil ground his cane and which partly belonged to defendant Arzuaga, this fact alone is sufficient to affirm that he was acquainted with Arzuaga's will and that he knew about Sosa Gil's negotiations.

802

cause of action brought, especially insofar as the title which defendant alleges to have acquired by usucapion is concerned. However, the defense of res judicata involves a question as to which there is no controversy whatsoever, and the requisites of identity required for its application being present, it is appropriate to render the corresponding judgment. *Ramos* v. *People*, 67 P.R.R. 600 (1947); *cf. Vega* v. *P. R. Railroad and Transport Co.*, 79 P.R.R. 379 (1956); *Municipality* v. *Super. Court, Torres, Int.*, 78 P.R.R. 777 (1955).

Judgment is rendered reversing the order entered by the Superior Court, San Juan Part, on May 4, 1956, and the case is remanded in order that the judgment be rendered dismissing the complaint as to defendants Victoria and Manuela Bolker.

(*g*) "Victoria Bolker . . . had been Yereguí's mistress for a long time.

(*h*) "When Yereguí and Victoria Bolker executed their contract on January 29, 1899, the latter was so poor that by her financial condition and way of living it seemed impossible to believe that she had $10,000 . . . ."

(*i*) ". . . we are not satisfied with defendant's oral evidence tending to show that about January or February 1898, and subsequent to Arzuaga's statements in his will, he again bought the property, although the price remained in his possession, and without executing a new deed because he still had the former document.

(*j*) "We believe from the result of the evidence that Victoria Bolker did not buy the estate 'Canovanillas' and that the consideration of obligation is false. . . ."