William H. MATTHEWS, Appellant,

v.

Lulu M. WOLVIN and Olive M. Matthews, as Surviving Trustees of Alliance Investment Corporation, etc., et al., Appellees.

No. 17205.

United States Court of Appeals
Fifth Circuit.

April 30, 1959.

Claude Pepper, Alfred I. Hopkins, Miami, Fla., Graham P. Stansbury, St. Petersburg, Fla., for appellant.

Baya M. Harrison, Jr., Sam H. Mann, Jr., Mann, Harrison & Mann, St. Petersburg, Fla., for appellees.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

The question for decision is whether the court below erred in granting summary judgment in favor of appellees and against appellant upon its holding that this action "to Establish a Trust, for Cancellation, for Accounting and for General Relief" is barred by *res judicata* based upon prior proceedings had between the same parties in a Florida state court.[1]

The gravamen of this action is that Olive and Pulver took over the assets of the Matthews family of very great value, persuading the members of the family to convey them to Alliance Investment Corporation with the agreement that said corporation would be owned in four equal parts by William, Gerald, Olive and Pulver. William resided in New York most of the time, but at intervals through the years, he moved to Florida and worked for Alliance. Gerald resided in Florida during the entire period, serving as President and as Vice President of Alliance during part of the period and rendering services to the various family interests and activities until he began suit in a Florida court as hereinafter set forth.

Instead of issuing the stock as agreed, the complaint alleges that 40 shares were issued to Olive, 40 shares to Pulver, and 1 share to Gerald, which was later issued as a qualifying share to Lulu Wolvin, an employee. Olive procured Pulver to transfer his 40 shares to her; and, in 1953, Alliance was dissolved as a corporate entity and its assets transferred to Olive and Lulu Wolvin as trustees. In 1955, Olive made known to all parties

1. The *dramatis personae* are William H. Matthews, plaintiff below, appellant here, and Olive M. Matthews, his older sister, Gerald G. Matthews, his older brother, Lulu M. Wolvin and Soft Water Laundry Co., Inc., defendants below, appellees here. Elizabeth Matthews, the mother of Olive, William, Gerald (and, in addition, Lillian Dillon, their sister, and Curtis Matthews, their brother) died in 1947 after a disabling illness of many years; and Frank Pulver, Elizabeth's brother and uncle of the Matthews brothers, and sisters, died October 5, 1955 after a lengthy disabling illness.

that she claimed to own all of the corporate assets, having intimated in 1949 to William that he might as well forget any claim he had to the properties which had been transferred to Alliance.

The state court proceedings consisted of a suit which Gerald began in a Florida Circuit Court, bearing the same heading as that set forth in the language quoted above, and in which, in June, 1955, he filed an amended complaint against the same parties as are sued in the present action, except that Pulver, then alive, was made a defendant.[2] The facts alleged in Gerald's complaint there were in general the same as those relied upon here by William.

William answered Gerald's state court complaint, admitting all of its allegations; and he included in his answer a cross-claim against the other parties defendant here, including also the executors of Pulver's estate. He set forth in his cross-claim the same basic averments as were included in Gerald's complaint and added some averments applying peculiarly to him. Olive and the other defendants filed motions to dismiss the cross-claim on the grounds that the cross-claim failed to state a cause of action, showed that William had been guilty of laches, that the cross-claim was insufficient to establish a trust, and that

William had mistaken his remedy. March 15, 1956, the Florida court entered an order granting said motions,[3] and allowed William twenty days in which to amend.

Within the time given, William filed his amended cross-claim against the same parties alleging the same facts in somewhat more detail and claiming the same relief. Olive and each of the other parties defendant to the cross-claim moved to dismiss, assigning substantially the same grounds which had been set forth in their original motions.[4] May 14, 1956, the court again dismissed William's cross-claim,[5] and again allowed a period for amendment. No further amendment was ever filed by William and no appeal was taken from the quoted order.

The Florida court proceeded to an extended final hearing upon the merits of Gerald's amended complaint. At the conclusion of the evidence offered by Gerald, the defendants in that suit (except William) filed a motion for dismissal of said cause and for entry of final decree in favor of said defendants on the ground that the evidence failed to make out a case in favor of Gerald. Two months later, January 18, 1957, said state circuit court entered its final decree in favor

2. Olive and Russell M. Knightly, executors of Pulver's estate, were brought in after Pulver's death.

3. "The foregoing cause coming on this day to be heard upon the motions to dismiss * * * and the same having been argued by counsel for the respective parties and duly considered by the Court, it is ordered that said motions and each of them be and the same are hereby granted."

4. "1. The amended Cross-Claim fails to state a cause of action.
"2. The amended Cross-Claim shows that the Cross-Claimant is guilty of laches.
"3. The allegations in the Amended Cross-Claim are insufficient to establish a trust.
"4. The amended Cross-Claim shows that the Cross-Claimant has mistaken his remedy.

"5. The allegations of the Amended Cross-Claim contain no matters of [sic] things which materially change the allegations of the original Cross-Claim filed by William H. Matthews.
"6. The allegations of said Amended Cross-Claim so contradict each other that it cannot be ascertained upon what matters and things the Cross-Claimant intends to rely."

5. "The foregoing cause coming on this day to be heard upon motions to dismiss the amended cross-complaint of William H. Matthews and the same having been argued by counsel for the respective parties and duly considered by the Court, it is ordered that said motions to dismiss be and the same is hereby granted. It is further ordered that cross-complainant William Matthews be allowed fifteen days in which to amend said cross-complaint."

of the defendants [6] (except William) in which it was recited that William's attorney sent word that he would not be present for the hearing upon the motion, which had been duly served upon him. The order dismissed Gerald's complaint with prejudice and also dismissed the claim and the cross-claim of William as set forth in his pleadings.

Most of the pleadings in the Florida state court suit and the orders entered there are in this record without objection or dispute. Based upon them appellant claims (1) that the claim or cause of action stated in the case before this Court is not the same cause of action as was dealt with by the Florida court; (2) that the judgment entered by the Florida Circuit Court dismissing his amended cross-complaint was a final appealable judgment, which took him entirely out of the case and rendered void the judgment entered by the Circuit Court against him on the final hearing; and (3) that the judgment dismissing his amended cross-claim was not a judgment upon the merits as, on its face, it appeared to be; because it was in truth based upon the doctrine of *forum non conveniens* and not upon any phase of the merits. These contentions will be discussed in this order.

We do not doubt that the claim William states in his complaint in the action before us is the same cause of action or claim which was dealt with by the Florida Circuit Court. Gerald and William were "in the same boat." They both claimed to have been filched of their family inheritance along with some valuable property turned in by them, by fraudulent machinations of their uncle, their sister and Lulu Wolvin, who was collaborating with these two. Gerald had in effect spelled out the rights of both in his state court complaint, and William

6. "This cause came on to be heard on the 18th day of January, 1957 on the Motion of the defendants, Lulu M. Wolvin and Olive M. Matthews as Trustees of the Alliance Investment Corporation, and Lulu M. Wolvin and Olive M. Matthews, individually, and Russell M. Knightly and Olive M. Matthews, as co-executors of the Estate of Frank F. Pulver, Deceased and Soft Water Laundry, Inc., at the conclusion of plaintiff's testimony, for the entry of a Final Decree finding in favor of said defendants and dismissing the Complaint heretofore filed herein, and said Motion having been argued by the attorney for the plaintiff and by the attorneys *for all of the defendants except William H. Matthews, and Victor O. Wehle, Esq., Attorney for plaintiff, having, at this hearing, advised the Court that Herman W. Goldner, Esq., Attorney for William H. Matthews, had requested him to advise the Court that he, Herman W. Goldner, would not be present at the hearing upon said Motion, and* the Court being fully advised in the premises, finds:

"1. That the equities in said cause are with the defendants, Lulu M. Wolvin and Olive M. Matthews as Trustees of the Alliance Investment Corporation, and Lulu M. Wolvin and Olive M. Matthews, individually, and Russell M. Knightly and Olive M. Matthews as co-executors of the Estate of Frank F. Pulver, deceased, and Soft Water Laundry, Inc., and against the plaintiff, and Gerald G. Matthews *and the defendant, William H. Matthews,* and

"2. Said Motion for the entry of a Final Decree should be granted; it is, therefore,

"Ordered, Adjudged and Decreed,

"1. That the equities in said cause are with the defendants, Lulu M. Wolvin and Olive M. Matthews as Trustees of the Alliance Investment Corporation, and Lulu M. Wolvin and Olive M. Matthews, individually, and Russell M. Knightly and Olive M. Matthews as co-executors of the Estate of Frank F. Pulver, Deceased, and Soft Water Laundry, Inc., *and against the plaintiff, Gerald G. Matthews, and the defendant William H. Matthews.*

"2. That the Complaint and any and all Amended Complaints and any Amendments to the Complaint be and the same are and each of them is hereby dismissed with prejudice; and that any *Claim or Cross-Claim which is contained in any Answer or Amended Answer filed by the defendant, William H. Matthews, be and the same are hereby dismissed with prejudice.*

"Done and Ordered in Chambers in Pinellas County, Florida in the Sixth Judicial Circuit of Florida, this 28th day of January, 1957.

"John Dickinson /s/
"Circuit Judge" [Emphasis supplied.]

had admitted Gerald's averments in his answer and had adopted, supplemented and embellished them by the cross-claim and the amended cross-claim filed by him.

■■ It is true that the complaint before us emphasizes the fact that their mother, Elizabeth, had died, and that William's state of health was such that he had not been able to develop his case as fully as he could have after the parties placed upon the stand by Gerald in his suit had brought out the details of the challenged transactions in the testimony they gave before the state court; and that the added information thus obtained placed William in position where he was able to establish actual fraud, whereas in the state court pleadings he had been content to confine his averments to what he calls constructive fraud. But these arguments address themselves to the minutiae of stating his claim. The cause of action before the state court and the claim before us are essentially the same and include the same ingredients. That William was unable to turn up all of the details sooner furnishes no legal basis for asserting that the present claim differs from that presented to the state court. Cf. Gladeview Drainage District, Palm Beach County, Fla. v. Keyes, 5 Cir., 1958, 258 F.2d 273. Doubtless most litigants feel, in the light of hindsight, that, given a second chance, they could present a stronger case.

We do not regard the case of Estevez v. Nabers, 5 Cir., 1955, 219 F.2d 321, upon which appellant bases his reliance, as authority for what he contends. In that case we held that the new action brought by Estevez against the Immigration Officials was barred by the former action, and we analyzed the facts sufficiently to demonstrate that. This language drawn from the several paragraphs of the opinion epitomize the rule which we applied there and which is applicable here. Discussing the fact that Estevez relied upon the contention that the facts in the new action were different from those in the former, we said (at pages 323–324):

"Different in a sense they are; but there is not such a difference in the facts alleged as to avoid the effect of the earlier judgment as res judicata. Although some courts seem to have held that the mere existence of facts in the second action not present in the first makes the principle of res judicata inapplicable, * * * we believe this criterion is clearly incorrect. * * * We recognize, on the other hand, that in some situations a second action is not barred by a former judgment when the complaints are identical save for the inclusion of certain additional facts in the second complaint. For example, if the complaint in the later action contains further allegations, the omission of which made the complaint in the first action demurrable, the judgment in the first action is not a bar to the second action, even though the plaintiff has failed to avail himself of permission to amend. * * * The cardinal principle is that the second action is precluded unless the new allegations supply a material deficiency of the complaint in the first action.

" * * * Our inquiry is limited to the question whether the *new* matters alleged create a controversy now where none existed. We are of the opinion that they do not. * * * These new events, therefore, have created no new dispute. They are simply aspects of the original exclusion order so inextricably involved in the consideration of the first action that they must have entered into the composition of the first judgment. * * *

" * * * But whether the first decision was on the merits or not is not important here, since we regard the two actions as not materially different, and the question actually decided in the first action disposes of the present one as well."

Under the facts briefly outlined above and under the tests thus spelled out, we

hold that the claim before us is the same claim which was involved in the state court action.

We cannot agree with appellant's contention that he was eliminated entirely from the state court case by the order granting the motions to dismiss his amended cross-claim. He was a defendant to Gerald's Florida suit, and he entered his appearance generally and filed an answer, which made him a party defendant for all proper purposes. He admitted all of the averments of Gerald's amended complaint, which probably had the effect of aligning him with Gerald in the trial of the case on its merits. At all events, according to the judgment of the Florida court, he had notice that the case would be tried, and he was a party defendant, and he chose not to participate in the trial. Nevertheless he is bound by everything which transpired in that trial except such matters as might have been raised exclusively by his cross-claim. The court found for the defendants in the trial on the merits, and the finding embraced every contention raised by Gerald's amended complaint, and included, under William's admission, therefore, the issues tendered by William in this present action.[7] It is plain, therefore, that William could not walk off and leave the pending suit to which he was a party defendant, and that he was bound by the judgment entered by the Florida court as limited to the issues raised by Gerald's complaint and admitted by William's answer.

While we do not doubt the accuracy of this conclusion, the answer to the third point raised by William so clearly disposes of the appeal that we rest our opinion on its decision. This point is his claim that the order dismissing his amended cross-claim was a final appealable judgment.[8] Insofar as the finality of the order dismissing the amended cross-complaint is concerned, there is really no dispute between the parties, their divergent views relating only to whether, by the entry of the order of May 14, 1956 dismissing appellant's cross-claim, the Florida court lost jurisdiction to dispose of the cross-claim in its judgment of January 28, 1957 disposing of the case on its merits.

In his reply brief appellant states: "Appellees are in error in asserting that the order of May 14, 1956 was not the final adjudication of appellant's action. When appellant declined to further amend his cross-complaint within the prescribed fifteen days, he obviously was out of court, in that action, at the end of the fifteen day period. In Alderman v. Puritan Dairy [1940], 145 Fla. 292 [199 So. 44] the Supreme Court of Florida held that where an order was entered granting a Motion to Dismiss a bill unless the plaintiffs should file an amended bill within twenty days, and where no amended bill was filed, the order was a final decree reviewable by appeal, and not an interlocutory decree reviewable by certiorari under Florida practice.

"So, in the case at bar, the Order of May 14, 1956, became a final order upon Appellant's declining to file an amended bill of complaint within the fifteen-day period. * * *"

This case cited by appellant decides, as claimed by him, that the order granting him fifteen days in which to amend his bill, which he failed to avail himself of, was a final judgment reviewable only by appeal.

The same is true of the later case of Capers v. Lee, Fla.1956, 91 So.2d 337, 339, upon which appellees rely so confidently. Based upon 30 F.S.A., Florida Rules of Civil Procedure, Rule 1.35(b),[9] the Supreme Court of Florida held that

---

7. The action of the Florida state court in entering judgment at this hearing on the merits on William's amended cross-claim was probably erroneous, as a final order dismissing that pleading had already been entered.

8. We leave out for the moment the contention that it was not a judgment upon the merits on the ground that it was rendered solely under the doctrine of *forum non conveniens*.

9. "For failure of the plaintiff to prosecute or to comply with any order of court, a defendant may move for dismissal of an action or of any claim against him."

an order dismissing a case with prejudice on its merits for failure to comply with an order granting leave to amend could not be set aside, even though the party against whom the order was entered did not have notice of it. The Court said: "He must then have understood that failure to submit an amended pleading within the time allowed by the court, or such extension thereof as he might, upon application, obtain, would result in dismissal of the cause, with prejudice."

The rule was reiterated by the Supreme Court of Florida in Hinchee v. Fisher, 1957, 93 So.2d 351, where an order had required certain monies to be paid into the registry of the court within ten days. The party thus ordered failed to comply and when a subsequent suit was brought involving substantially the same matters, the Florida court held the latter suit to be barred by the judgment of dismissal in the former, based upon the principle of *res judicata*. Applying the rule above quoted, the court held that the dismissal for failure to comply with the court's order was upon the merits (at page 353):

> "An 'adjudication upon the merits' has the effect of establishing a 'final judgment' for purposes of appeal * * * and will supply a foundation for the application of the doctrine of res adjudicata * * * Rule 1.35(b) provides that dismissals such as the one involved in this case 'shall operate as an adjudication upon the merits.' Thus, the dismissal of the first complaint in the present controversy was a 'final judgment' reviewable only by appeal, and such was the effect of our order in Fisher v. Hinchee, supra. Since the judgment has not been timely set aside on appeal or vacated, the doctrine of res adjudicata applies to prevent another action upon the same matter. * * * 'A judgment on the merits does not require a determination of the controversy after a trial or hearing on controverted facts. It is sufficient if the record shows that the parties might have

had their controversies determined according to their respective rights if they had presented all their evidence and the court had applied the law.' Olsen v. Muskegon Piston Ring Co., 6 Cir., 1941, 117 F.2d 163, 165."

The Florida court proceeded to discuss the Federal Rules of Civil Procedure and to identify Florida's rule above quoted with Rule 41(b), F.R.Civ.P., 28 U.S.C.A. And cf. our decision in Drawdy Investment Co. v. Leonard, 1958, 261 F.2d 226.

█ In other cases the Florida Supreme Court has adhered strictly to the rule that parties will not be permitted to litigate the same issue more than once, stating the rule to be that "when a right or fact has been judicially tried and determined by a court of competent jurisdiction, or an opportunity for such trial has been given, the judgment of the court, so long as it remains unreversed, should be conclusive upon the parties, and those in privity with them in law or estate." See Hay v. Salisbury, 1926, 92 Fla. 446, 109 So. 617, 620. And see also McGregor v. Provident Trust Co. of Philadelphia, 1935, 119 Fla. 718, 162 So. 323; Knabb v. Duner, 1940, 143 Fla. 92, 196 So. 456; Wolfson v. Ruben, Fla.1951, 52 So.2d 344; and Gordon v. Gordon, Fla.1952, 59 So.2d 40.

█ In our case of Ballard v. First National Bank of Birmingham, 5 Cir., 1958, 259 F.2d 681, we held that the principle of *res judicata* was not affected by the character of the suit whose judgment was relied upon to bar the second action, or the alignment of the parties as plaintiff or defendant in that suit. Ballard had been sued by the bank in a state court of Alabama, and he pled that the instrument upon which the suit was predicated included usurious interest. The Alabama courts ruled against him, and he raised the same question in an action he brought against the bank in the United States District Court, involving the same claim of usurious interest. He pointed out that the judgment of the

Alabama court, affirmed by its Supreme Court, was in contravention of decisions of this Court on the same subject. We held, at pages 683–684:

" 'The doctrine of *res judicata* does not depend upon whether or not the prior judgment was right. It rests upon the finality of judgments as a matter of public policy, to the end that controversies once decided shall remain in repose.'

\*　　\*　　\*　　\*　　\*　　\*

" 'It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief. \*　\*　\*' "

In that case we stated further (at page 684):

"The estoppel under discussion is based upon the judgment of the Alabama Circuit Court as bounded and defined by the pleadings and as interpreted and construed by the Supreme Court of Alabama."

This principle is controlling in connection with appellant's last point under which he contends that the Florida state court judgment of May 14, 1956 dismissing his cross-complaint was upon a procedural point only, although appearing from its recitals to be upon the merits, unless his affidavits sufficiently raise an issue with respect to his contention that it was not in fact so. He concedes, as he must, that, on the face of the record, the motions to dismiss William's cross-action were grounded wholly upon the merits of the case as spelled out in the cross-claim, and that the judgment entered by the Florida court May 14, 1956 merely granted the motions.

■ But appellant would have us ignore the recitals of the order dismissing his amended cross-claim and the averments of the motions upon which it was based, because he claims that the order was in fact rendered, not upon the motions it recited as its sole bases, but upon the doctrine of *forum non conveniens*. This contention by appellant is based upon affidavits by Gerald and William's son that the Florida state judge, just before the entry of the order of May 14, 1955, "made the comment in substance and effect that he was not letting his court be used to wash New York State's dirty linen." The most obvious answer to that contention is the universally established principle that, except where fraud or want of jurisdiction is charged—and there is no such charge here—the recitals of a judgment import absolute verity; and a court called upon to determine its character and reach upon a plea of *res judicata* looks only to the face of the judgment and the pleadings upon which it is rendered. The remark attributed to the state court judge had no relevancy to the motions to dismiss, which were the only matter before the court. Assuming, as the affidavits show, that the trial judge did make such a remark, this Court could not conclude upon the record presented that it formed a predicate for his action.

■ The position taken by appellant amounts to the charge [10] that the judge entered an order reciting that it was based upon the motions filed by appellees,

---

10. Although appellant's attorneys specifically disavow any intimation that the judge was guilty of any impropriety.

when in fact it was based solely upon his refusal to pass upon the merits at all because of his disinclination to permit the washing in his court of "New York State's dirty linen." [11] Where no fraud is charged in the entry of a judgment, it is not permissible to ignore its solemn recitals and give ear to the informal remarks of the judge made during the give and take of the discussion upon which the formal action is predicated.

It is obvious, moreover, that the remark of the Florida judge, as established by the unchallenged affidavits, cannot be stretched to justify the contention that he was invoking against appellant the doctrine of *forum non conveniens*. The central theme of that doctrine [12] is that a court will transfer a suit or decline jurisdiction of it when it appears that the scene of the controversy is laid in another state, so that the litigants and witnesses will have to come from that state, making it "inconvenient" to try it in the jurisdiction invoked.

We have nothing like that here. All of the fraud charged, both in Gerald's complaint and William's cross-action, was against residents of Flordia, and all of the acts performed by them had a Florida situs. There is no showing that any witnesses from New York would be called upon to testify except as to minor and incidental matters, and all of the pleadings clearly reflect that the testimony would come mainly from witnesses conversant with what had been going on in Florida over a number of years. We find no factual basis at all for the contention that the state court judgment dismissing the amended cross-complaint of appellant was based upon anything except what is reflected by the records of the Florida court. Accepting the statements of appellant's affidavits as true, no material issue is raised as to the accuracy of the recitals of the judgment dismissing William's amended cross-claim, and the matter was properly one for summary judgment.

The argument as to which judgment constitutes the basis of *res judicata* is of no importance. Both the judgment of May 14, 1956 dismissing appellant's cross-claim and the final judgment of January 27, 1957 are before us without objection or dispute. That being true, we base our decision upon the uncontroverted showing made on the motion for summary judgment and hold that the order dismissing the amended counterclaim was a final judgment on the merits. Appellant did not avail himself of his right to amend or to appeal and, under the well settled principles discussed, he is estopped to litigate again the matters which were adjudicated by the state court of Florida.

Affirmed.

11. Such a feeling on the judge's part would furnish no legal grounds for refusing to entertain William's counterclaim, which he had a perfect right to file and to prosecute to adjudication. Florida law, e. g., Section 38.10, Florida Statutes, F.S.A., provides adequate machinery for challenging the fairness of a trial judge, but appellant did not avail himself of it, and did not raise or mention the matter of *forum non conveniens* in the trial in the state court.

12. Cf. Tivoli Realty, Inc. v. Interstate Circuit, Inc., 5 Cir., 1948, 167 F.2d 155, certiorari denied 334 U.S. 837, 68 S.Ct. 1494, 92 L.Ed. 1762; 14 Am.Jur., Courts, § 230, p. 424; 21 C.J.S. Courts § 77, p. 114 and "Forum Non Conveniens and 28 U.S.Code 1404 (a)," Mississippi Law Journal, December, 1951 issue.