**Bryan W. NICKERSON, Jr., Plaintiff,**

v.

**PEP BOYS—MANNY, MOE & JACK, Defendant.**

Civ. A. No. 2856.

United States District Court
D. Delaware.

Oct. 28, 1965.

Bryan W. Nickerson, Jr., pro se.

Carl W. Mortenson, Wilmington, Del., E. Arthur Thompson, John H. Austin, and Henry N. Paul, Jr., of Paul & Paul, Philadelphia, Pa., John W. Packel, Israel Packel, of Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., of counsel, for defendant.

STEEL, District Judge.

Plaintiff charges defendant with the infringement of Reissue Letters Patent No. Re. 24,514. This same patent was adjudged invalid in Nickerson v. Bearfoot Sole Co., 311 F.2d 858 (6th Cir.),

cert. denied, 375 U.S. 815, 84 S.Ct. 48, 11 L.Ed.2d 50 petition for rehearing denied, 375 U.S. 949, 84 S.Ct. 343, 11 L.Ed. 2d 279 (1963) (alternate holding), in which plaintiff herein sued a different defendant who was not in privity with the present defendant. Plaintiff asserts that the structures accused in the two actions are significantly different, and this will be assumed to be so.

The motion of the defendant for summary judgment raises the question, among others, whether the doctrine of *res judicata* by collateral estoppel requires this court to adjudge the patent sued upon to be invalid because of the prior adjudication of invalidity.

In Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), it was held that an adjudication adverse to a claim in a patent does not preclude another suit upon the same claim against a different defendant. The Court stated that while the earlier decision may by comity be given great weight in the later litigation, it is not *res judicata* and may not be pleaded as a defense. Two cases were cited to support this view: Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856 (1900) and Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 35, 50 S.Ct. 9, 74 L.Ed. 147 (1929).

Mast held that an adjudication of validity (the converse of the situation in Triplett and at bar) against one defendant does not require a determination of validity in a second suit against a different defendant. This is readily understandable for it would obviously be inequitable to have the defendant in the second suit bound by the validity adjudication in the earlier suit, when he had no opportunity to be heard on the question. See Sutherland Paper Co. v. Grant Paper Box Co., 3 Cir., 183 F.2d 926, 936, cert. denied, 340 U.S. 906, 71 S.Ct. 281, 95 L.Ed. 655 (1950). The situation in the present case, where the patentee has had an opportunity in a prior suit to fully litigate the issue of validity and has suffered an adverse verdict, is far different.

In Winters the Seventh Circuit Court of Appeals had held a latch patent valid and infringed by one who had used them. The action was defended by counsel employed and paid by the manufacturer of the latches which had sold them to the defendant. Before final judgment was entered the patentee brought a second suit in the Third Circuit against the manufacturer-vendor. The Court of Appeals for the Third Circuit held that the patent was not infringed. Because of the division on the infringement issue in the two circuits, *certiorari* was granted by the Supreme Court. The adjudication of infringement in the first suit, under settled principles, would have been *res judicata* in the second, the plaintiff being the same and the defense of the first action having been controlled by the defendant in the second action. However, since there was nothing in the record in the Third Circuit case to raise the issue of estoppel by the prior judgment of infringement, the Supreme Court held that the effect of the decree in the Seventh Circuit was, at most, that which it had under the doctrine of comity.

Triplett likewise cited Expanded Metal Co. v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034 (1909); Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527 (1911); Abercrombie & Fitch Co. v. Baldwin, 245 U.S. 198, 38 S.Ct. 104, 62 L.Ed. 240 (1917) as instances in which courts had held claims of patents to be valid even though in previous suits against different defendants they had been held to be invalid. None of these cases, however, discussed the question of the *res judicata* effect of the prior adjudication.

From the standpoint of the precedents, therefore, Triplett v. Lowell does not rest upon too solid a a foundation.

Nevertheless, the principle which it laid down has been followed in later cases. Tatko Bros. Slate Co. v. Hannon, 270 F.2d 571 (2d Cir.), cert. denied, 361 U.S. 915, 80 S.Ct. 260, 4 L.Ed.2d 185 (1959); S. H. Kress & Co. v. Aghnides, 246 F.2d 718 (4th Cir.), cert. denied, 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 189 (1957); Aghindes v. Holden, 226 F.2d 949 (7th Cir. 1955); Park-In Theaters, Inc. v. Waters, 185 F.2d 193 (5th Cir. 1950). See Urquhart v. Commissioner, 215 F.2d 17, 20 (3d Cir. 1954) where it was said by way of *dictum* that the principle is well settled, and Pierce v. Allan B. Du Mont Laboratories, Inc., 156 F. Supp. 237, 239 (D.Del. 1957), which states it to be axiomatic.

The view that an adjudication of patent invalidity should not be binding upon a patentee in a second suit against a different defendant, undoubtedly has its roots in the theory that in order for a judgment to prevent relitigation of a point once decided, the estoppel of the judgment must be mutual. Since an adjudication of validity of a patent in one action would not be binding in a second action against a different defendant not in privity with the defendant in the first action, under the mutuality theory it would follow that a patentee in a second action should not be bound by an adjudication of invalidity in an earlier suit.

Since Triplett v. Lowell, supra, the logic of the mutuality rule has been frequently criticized and has been repudiated by a number of courts. The decisions are collected and analyzed in an 8-page appendix in 53 Calif.L.Rev., 38–46 (1965).[1] For the most part those

1. In the leading case of Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892, 894 (1942), the Court said:
   No satisfactory rationalization has been advanced for the requirement of mutuality.
   See United Banana Co. v. United Fruit Co., 172 F.Supp. 580 (D.Conn.1959); Coca-Cola v. Pepsi-Cola, [6 W.W.Harr. 124] 36 Del. 124, 172 A. 260 (1934). See generally, Currie, Mutuality of Collateral Estoppel, Limits of Bernhard Doctrine, 9 Stan.L.Rev. 821, and a later article by the same author, Currie, Civil Procedure: The Tempest Brews, 53 Calif.L.Rev. 25 (1965). Contra: 1B Moore, Federal Practice ¶ 0.412 (2d ed. 1965).

examining the question have recognized that a determination of a fact in favor of "A" in an action against "B" cannot fairly create an estoppel against "C" when the same fact is put in issue in a later action by "A" against "C", for otherwise "C" would be deprived of a hearing on an issue important to his rights. On the other hand the courts which have repudiated the mutuality rule find it not unfair for "A" to be barred from litigating an issue a second time in an action against "C", if in a prior action against "B" the issue has been decided against "A". This is because "A" has had his day in court, and unless he is bound by the prior adverse ruling he will be able to prosecute litigation indefinitely provided that he can find different defendants to sue. The mutuality rule thus runs counter to the salutary public policy that there be a definite end to litigation when a party has had a full, free and untrammeled opportunity to present all facts pertinent to a controversy and to be heard thereon.

In spite of the frequency of the rejection of the mutuality rule in recent years, thus far it has not been departed from where the issue of patent validity is involved. The rule which permits a patent which has been adjudged invalid to be litigated *ad infinitum* has been said to be a "queer" one, and "particularly abhorrent when considered against the backlog of untried cases which clog our federal courts." Aghnides v. Holden, 226 F.2d 949, 951 (7th Cir. 1955) (concurring opinion of Circuit Judge Schnackenberg).

While there is no precedent in this circuit directly in point, Judge Goodrich, in a concurring opinion in Bruszewski v. United States, 181 F.2d 419 (3d Cir.), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950) construed the opinion by Judge Hastie written for the majority of the Court as expressing a *rationale* which would require the dismissal of the present action. Judge Goodrich said:

The difference between Judge Hastie's analysis and my own will be brought out by the following hypothetical case:

A brings an action against B for infringement of a patent. B defends on the ground that the alleged patent was void and obtains judgment. A brings an action for infringement of the same patent against C who seeks to interpose the judgment in favor of B as res judicata, but setting up no relation with B.

I gather that Judge Hastie would say that A has had his day in court, has lost and should not have another chance. On this I should, as at present advised, disagree. The hypothetical case put is Illustration 10 to Section 93 of the Restatement of Judgments.

On its facts, Bruszewski might be said to be analogous to cases such as Portland Gold Mining Co. v. Stratton's Independence, Ltd., 158 F. 63 (8th Cir. 1907) which hold that if a defendant's responsibility is necessarily dependent upon the culpability of another who is the immediate actor, and who, in an action against him by the same plaintiff for the same act, has been adjudged not culpable, the defendant may have the benefit of that judgment as an estoppel, even though he would not have been bound by it had it been the other way. Nevertheless, Bruszewski apparently rests upon a broader base. The opinion rejects the requirement of estoppel mutuality and that departures be restricted to definable categories of privity between defendants. Instead, the decision holds broadly that it is not unfair to hold a plaintiff barred from relitigating a question against one defendant when the question has been adjudged adversely to the plaintiff in an action against another defendant, after the plaintiff has had a full and fair opportunity to litigate his rights. The Court stated that "[b]oth orderliness and reasonable time saving in judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circum-

stances of a particular case." [181 F.2d p. 421]

Here there are no circumstances that would make it unfair to hold that plaintiff is estopped by the judgment in Nickerson v. Bearfoot Sole Co. to relitigate the validity of his patent. Plaintiff selected Bearfoot Sole Co. as the defendant he wished to sue. He also chose the forum in which to bring the action. The question of the validity of the patent was not summarily disposed of for the opinion covers some twenty-five pages. Plaintiff has not suggested that he has additional evidence to present to this Court if he should go to trial. Plaintiff's chief contention is that the Bearfoot Sole Co. case was wrongly decided. Considerations of public policy make it desirable to terminate once and for all further litigation on the validity of the patent.

In saying this, the fact is not overlooked that patent ownership, unlike many rights which the law protects, inherently possesses the potentiality of multiple law suits. Because of this, a situation may be imagined which might make it unfair to hold a patentee bound by an adverse decision as to validity when he sues a different defendant. Suppose, for instance, a patentee had sued successively a large number of infringers and in each instance his patent is sustained. Suppose further, that in his next suit the patent is adjudged invalid. To hold that the last decision is a bar to the patentee suing other infringers might be unjust, for the holding of invalidity, in view of repeated prior decisions to the contrary, would at least suggest that something was amiss with the decision which held the patent invalid.[2]

The present case is not the "hard case" such as that hypothesized. The mere possibility that some day there might be such a case is not enough to militate against the Court now doing what, under the facts of the present case, seems imminently equitable to both parties, and in furtherance of the public interest that litigation be ended, i. e. to hold that plaintiff is estopped by the judgment in Nickerson v. Bearfoot Sole Co. to relitigate the validity of his patent. If a case comparable to that postulated should ever arise it is not to be expected that the estoppel rule would be applied to bring about an unjust result. Compare Currie, Civil Procedure: The Tempest Brews, 53 Calif.L.Rev. 25, 35–37 (1965).

The views which have been expressed make it unnecessary to consider other points which the defendant has raised.

The motion of the defendant for summary judgment will be granted.

2. The estoppel problem in the patent field, is the converse to that involved when a disaster occurs, such as an accident by a common carrier in which many passengers are injured. In Zdanok v. Glidden Co., 327 F.2d 944, 955 (2d Cir. 1964), the court postulates the case of fifty persons injured in a railroad accident. The Court said that there would be something wrong if the railroad, after successfully defending twenty actions, should lose the twenty-first and thereby be foreclosed from defending the next twenty-nine. Despite the possibility of such a situation arising, an initial determination of the liability of an air line company in suits on behalf of twenty-four passengers who were killed in a crash, was held to estop the airline company from relitigating its liability in a second consolidated action on behalf of an additional seven passengers killed in the same crash. United States v. United Air Lines, 216 F.Supp. 709, 725–729 (E.D.Wash., D.Nev.1962), aff'd as to res judicata, sub nom, United Air Lines v. Weiner, 335 F.2d 379, 404–405 (9th Cir.), cert. denied, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964).