**Bryan W. NICKERSON, Jr., Plaintiff,**

**v.**

**Josef KUTSCHERA, A. G. Birkenruth, the Tidewater Oil Company, Defendants.**

**Civ. A. No. 3249.**

United States District Court
D. Delaware.

Jan. 6, 1969.

As Modified Feb. 3, 1969.

Further Modification Feb. 6, 1969.

Bryan W. Nickerson, Jr., pro se.

Joseph A. Julian, Jr., Wilmington, Del., for defendant Kutschera.

William J. Wier, Jr., Wilmington, Del., for defendant Birkenruth.

Henry M. Canby, Wilmington, Del., for defendant Tidewater Oil Co.

1

## OPINION

STEEL, District Judge.

After this Court granted the motion of defendants to dismiss the supplemental complaint upon the ground that it was barred by collateral estoppel under the doctrine of res judicata, plaintiff appealed. The Court of Appeals reversed and remanded the case to enable this Court to make additional findings. Nickerson v. Kutschera, 390 F.2d 812 (3d Cir. 1968).

To understand the present posture of the case, reference to the background of the litigation is required.

Plaintiff, a patentee, brought three successive actions for the infringement of U. S. Patent No. 2,691,550 and Reissue Patent No. RE 24,518 relating to a sidewall attachment for a vehicle tire. The defendant in each action was different and no privity existed between them. Nor, so far as appears, did any one defendant control the defense of the other two suits.

The first action was begun in the District Court for the Northern District of Ohio, Eastern Division against Bearfoot Sole Company. That Court held the patent to be valid and infringed. Upon appeal, the judgment was reversed on the grounds that the patent claims were invalid for want of invention, and if they were valid, they were not infringed. Nickerson v. Bearfoot Sole Co., Inc., 311 F.2d 858 (6th Cir. 1963), cert. denied, 375 U.S. 815, 84 S.Ct. 48, 11 L.Ed.2d 50, reh. denied, 375 U.S. 949, 84 S.Ct. 343, 11 L.Ed.2d 279 (1963).

Thereafter, plaintiff brought an action in this Court against the Pep Boys-Manny, Moe & Jack. Defendant moved for summary judgment which was granted upon the ground that plaintiff was estopped by the judgment in the *Bearfoot* case from relitigating the validity of his patent. Nickerson v. Pep Boys-Manny, Moe & Jack, 247 F.Supp. 221 (D.Del. 1965). Plaintiff appealed but before the appeal was argued the case was settled by agreement and the case was dismissed without prejudice on March 22, 1966.

The third action is the present one. Plaintiff brought it against Kutschera and by supplemental complaint also against Birkenruth and The Tidewater Oil Company. Upon the motion of Birkenruth, which was joined in by Kutschera and Tidewater Oil Company, the action was dismissed for the reasons stated in Nickerson v. Pep Boys-Manny, Moe & Jack, supra.

Plaintiff appealed, and the Court of Appeals reversed and remanded the case. Nickerson v. Kutschera, 390 F.2d 812 (3d Cir. 1968). The Court stated that for purposes of the appeal it would assume that the opinion in the *Pep Boys* case was the opinion of this Court in the instant case, with one exception.[1] This exception is based upon the fact that in the *Pep Boys* case plaintiff had not suggested that he had additional evidence to present if he should go to trial, whereas in the instant action plaintiff had orally represented to the Court of Appeals that he had "new material" on the state of the prior art to offer which was not present in the *Bearfoot* litigation.[2] This representation prompted the Court of Appeals to say (390 F.2d at 814):

"[W]e assume for purposes of this appeal that Nickerson does have new evidence to offer in the present case, which evidence was not present in the *Bearfoot* litigation."

Because of this assumption, the Court of Appeals remanded the case so that this Court might make additional findings indicated by its opinion. It said (p. 815):

"Since we do not know the nature of Nickerson's 'additional evidence,' we are unable to judge whether it shows that an entirely different factual basis

---

1. Otherwise, the Court stated that it would disregard the *Pep Boys* case entirely, since it had been dismissed by agreement without prejudice. 390 F.2d at 813.

2. Plaintiff had made no such suggestion to this Court prior to the dismissal of the action.

supports the patent's validity or there exists a new 'cause of action.' It thus can not clearly be said on this record that Nickerson has fairly had his 'day in court' in the *Bearfoot* litigation. In any event such a determination must first be made by the district court."

Following the remand, the defendant Birkenruth asked plaintiff, by way of interrogatories, to "describe in detail each and every item of new material which was not present in the *Bearfoot* litigation," and to supply related information. Plaintiff's answer discloses that he has four items of "new material" which were not presented in *Bearfoot* and as to which the following facts are pertinent:

1. A model which plaintiff has identified as Plaintiff Exhibit 1. It relates to the J. H. Barnes prior-art patent, No. 2,621,979. Plaintiff does not say whether he or someone else made the model. The model did not come into existence until about March 1, 1964, after the conclusion of the *Bearfoot* litigation. Plaintiff states that at the time of the *Bearfoot* litigation he was familiar with the Barnes patent but was not then sufficiently knowledgeable to interpret its true function. The Barnes patent was dealt with at length in *Bearfoot*.

2. An affidavit of plaintiff verified June 26, 1968, identified as Plaintiff Exhibit 2. This was prepared after the mandate was received from the Court of Appeals on May 6, 1968. The affidavit states that certain "facts" in the affidavit were not part of the record in the *Bearfoot* case. The most important is the assertion by plaintiff that the model (Exhibit 1) demonstrates a part of the Barnes structure and its true function which were not recognized or understood by the Court of Appeals in *Bearfoot*. Plaintiff states with all candor that he is not sure that the testimony in his affidavit "fully qualifies as new material." "It is, however," he states, "fresh presentation and a more accurate interpretation of the patent in suit." Thereafter, the plaintiff refers to the "erroneous and misguided perception" by the

Court of Appeals in *Bearfoot* of the relative function of the prior art and the patent in suit.

3. Affidavit of Wixon, verified February 13, 1965, designated as Plaintiff Exhibit 3. This was prepared at the request of the plaintiff who states that the affidavit did not become relevant until after the decision by the Court of Appeals in *Bearfoot*.

4. Affidavit of James H. Barnes, verified January 17, 1956, filed in the United States Patent Office, designated Plaintiff Exhibit 4. This was discovered by plaintiff on or about April 1, 1963.

These four items of "new evidence" call for varied comments. The relevance of the Wixon and Barnes affidavits is obscure. Plaintiff admits that it is dubious whether his affidavit presents "new material." The purpose of the model is to demonstrate the Court of Appeals in *Bearfoot* misunderstood the Barnes patent. There can be no question but that the Court of Appeals did consider the full implications of the Barnes disclosure. See Nickerson v. Bearfoot Sole Co., Inc., supra, 311 F.2d at 861–862, 878. The model is offered by Nickerson to enable him to reargue the conclusions arrived at in *Bearfoot*.

Furthermore, the Barnes affidavit was discovered by plaintiff on or about April 1, 1963, less than three months after the Court of Appeals opinion in *Bearfoot*. Its contents were known to plaintiff before his application for certiorari was denied by the Supreme Court on October 14, 1963, and his motion for rehearing in the Supreme Court was denied on December 9, 1963. See 375 U.S. 815, 84 S.Ct. 48, 11 L.Ed.2d 50; 375 U.S. 949, 84 S.Ct. 343, 11 L.Ed.2d 279. Had the Barnes affidavit been deemed to be newly-discovered evidence of significance, plaintiff might have sought relief from the *Bearfoot* judgment under Rule 60 (b), Fed.R.Civ.P. See Eller v. Paul Revere Life Ins. Co., 138 F.2d 403, 406, 149 A.L.R. 1191 (quoting with approval Quirk v. Rooney, 130 Cal. 505, 511, 62 P.

825, 827 (1900)); 149 A.L.R. 1195, 1196.[3]

It is to be noted also that the model was discovered on or about March 1, 1964, and the Barnes affidavit was discovered on or about April 1, 1963. Plaintiff knew of both of these items prior to June 3, 1964, when he began his action for infringement against the Pep Boys on June 3, 1964; and the Wixon affidavit of February 13, 1965, made at the request of plaintiff, was available to plaintiff prior to the opinion adverse to plaintiff in the *Pep Boys* case which was rendered on October 28, 1965. Yet plaintiff, who now urges so insistently that this "new evidence" deprives the *Bearfoot* judgment of having the effect of an estoppel, did nothing to bring this evidence to the Court's attention when the question of the estoppel of the *Bearfoot* judgment was before the Court in the *Pep Boys* case.

The defendant in the *Bearfoot* case and those in the instant one are not the same. Plaintiff's right in each case is claimed to have been invaded by different acts of wrongdoing by different defendants. The causes of action are different.

■ Both cases, however, involve a common issue, i. e., the validity of plaintiff's U. S. Patent No. 2,691,550 and Reissue Patent No. RE 24,518.[4] This point was in controversy in both cases. When causes of action in two successive suits are different, an adjudication in the first action of the point or question or issue actually litigated is a bar to the relitigation of the same point or question or issue in the second suit. This was settled almost a century ago in Cromwell v.

County of Sac, 94 U.S. 351, 352–353, 24 L.Ed. 195 (1876). This principle of collateral estoppel is reiterated in Restatement of Judgments § 68(1):

"When a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action."

In Vanderveer v. Erie Malleable Iron Co., 238 F.2d 510 (3d Cir. 1956), cert. denied, 353 U.S. 937, 77 S.Ct. 815, 1 L. Ed.2d 760 (1957), this doctrine of collateral estoppel was applied in a patent infringement action. The Court held that a prior judgment in a suit for royalties under a patent license agreement, holding that the licensee's device was not within the scope of the patent, barred relitigation of the issue whether the same device infringed the same patent in a subsequent infringement suit between the same parties. The Court said (238 F.2d at 512):

"Under the doctrine of collateral estoppel, an aspect of res judicata, though the causes of action be different, a decision by a court of competent jurisdiction in respect to any essential fact or question in one action is likewise conclusive between the same parties in all subsequent actions * * *."

2 Freeman on Judgments § 677 (5th ed. 1925), is to the same effect.

■ The fact that plaintiff in the present action relies upon evidence which was not in the *Bearfoot* record cannot prevent the *Bearfoot* judgment from estopping plaintiff from relitigating the validity of his patent.[5] This is true even

---

3. Such action was considered by plaintiff and his attorneys. At the argument following the remand, plaintiff said that he asked his attorneys about attempting to reopen the judgment, but they told him it would be "a waste of time" to ask the Sixth Circuit to do this.

4. In the *Bearfoot* case the Court said (311 F.2d at 859): "The determining issues on review are whether the claims

in appellee's patent are valid and infringed."

5. This statement presupposes that current general principles of collateral estoppel by judgment eliminate the traditional requirement of "mutuality of estoppel," see Bruszewski v. United States, 181 F.2d 419 (3 Cir. 1950), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950), and that these current principles

though, as has been stated, the causes of action in the two suits are different, for the fact is that the issue of the validity of plaintiff's patent was common to both actions.

Thus, in Southern Pac. R. R. v. United States, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355 (1897), the United States sued the Southern Pacific to determine title to certain lands which they both claimed. The United States based its claim upon "maps of definite location." The Southern Pacific argued that the maps were invalid. The issue of map validity was resolved in favor of the United States and judgment was rendered for it. Later, the United States brought another suit to determine title to other lands and again relied upon the validity of the "maps of definite location" involved in the first action. The Southern Pacific offered new evidence not before the Court in the earlier action to support its claim to title upon the ground again that the maps were not valid. The Supreme Court held that the United States was entitled to a judgment upon the basis of the estoppel by the earlier judgment which determined the "maps of definite location" to be valid. It said (168 U.S. at 55, 18 S.Ct. at 29):

" * * * the former judgment, while unmodified, determined the character of the maps as between the United States and the Southern Pacific Railroad Company."

The Court said (168 U.S. at 62, 18 S.Ct. at 32):

"Even if we were prepared upon a re-examination of the former cases, or upon the showing of the present record, to hold that the maps of 1872 were not valid maps of definite location, we could not for that reason, in this proceeding, go behind the former adjudication, and deny to the United States the benefit of the rule making that adjudication, so long as it was unmodified, conclusive, as between the par-

ties to it, of all matters actually determined under the issues in the prior suits."

The Court then rejected the suggestion of counsel for Southern Pacific that the Court examine evidence offered in the present action which had not been presented in the prior litigation. The Court said (168 U.S. at 65, 18 S.Ct. at 33):

"The application to consider that evidence is practically an application for a rehearing as to things directly determined in the former suits between the same parties, and which adjudication has never been modified. Such a course of procedure is wholly inadmissible under the settled rule of *res judicata*. Without, therefore, expressing any opinion as to the effect of this new evidence relating to matters once finally adjudged, we hold that Southern Pacific Railroad Company cannot, in this proceeding, question the validity of those maps as maps of definite location."

Last Chance Min. Co. v. Tyler Min. Co., 157 U.S. 683, 15 S.Ct. 733, 39 L.Ed. 859 (1895), arose out of the following circumstances: Tyler filed an application in the Land Office for a patent for a parcel of Government-owned land. Pursuant to statute Last Chance filed an "adverse claim" in the Land Office as to part of the land claimed by Tyler, and all Land Office proceedings were thereafter suspended pending the outcome of a suit by Last Chance in a Court for the Territory of Idaho. That action resulted in a judgment that Last Chance was entitled to the possession of all of the land in dispute between the parties by virtue of a valid location of the mining claim on September 17, 1885. Later, Tyler brought an action in the Circuit Court of the United States for the District of Idaho for the possession of the portion of a mineral vein included in the land involved in the earlier litigation as well as the value of the ores taken therefrom by

are applicable to patent infringement claims as this Court held in Nickerson v. Pep Boys-Manny, Moe & Jack, supra, without discernable disapproval by the Court of Appeals in Nickerson v. Kutschera, supra.

Last Chance. The Circuit Court excluded from evidence the judgment of the Idaho Territorial Court and admitted parole testimony for the purpose of determining priority of location, as a result of which Tyler prevailed. This decision was reversed by the Supreme Court which held that the issue of priority of location with the concomitant right of Last Chance to possession of the land was conclusively resolved by the judgment of the Territorial Court. The Supreme Court pointed out that the matter in controversy in Territorial Court was not the matter in dispute in the Circuit Court, and hence the judgment in the former case was not conclusive as to matters which might have been decided, but only as to matters which were in fact decided (157 U.S. at 687, 15 S.Ct. 733). Referring to the latter situation, the Court noted that when in earlier litigation a fact was determined, an estoppel thereby arose against later relitigating the same fact regardless of the evidence upon which the initial judgment was based. The Court said (157 U.S. at 691, 15 S.Ct. at 736):

> "The essence of estoppel by judgment is that there has been a determination of a fact, and the question always is, has there been such determination, and not upon what evidence or by what means was it reached?"

Other authorities have reached the same conclusion. Matthews v. Wolvin, 266 F.2d 722 (5th Cir. 1959); Anselmo v. Hardin, 253 F.2d 165, 169 (3d.Cir. 1958);[6] United States v. Silliman, 167 F.2d 607 (3d Cir. 1948), cert. denied, 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379 (1948);[7] Eller v. Paul Revere Life Ins. Co., 138 F.2d 403, 149 A.L.R. 1191 (8th Cir. 1943); Tillman v. National City Bank of New York, 118 F.2d 631, 635 (2d Cir. 1941), cert. denied, 314 U.S. 650, 62 S.Ct. 96, 86 L.Ed. 521 (1941); Restatement, Judgments § 68, comment "f"; 1B Moore's Federal Practice ¶ 0.441, p. 3778 (2d ed. 1965).

In view of the uniformity of the foregoing authorities, plaintiff must be deemed to have had his day in court when, in the *Bearfoot* case, the patent now sued upon was held to be invalid. Thus, there appears to be no reason to depart from the conclusion arrived at by this Court when Nickerson v. Kutschera, supra, was originally before it that plaintiff is estopped from now relitigating the validity of his patent. The reasons for this conclusion are stated in Nickerson v. Pep Boys-Manny, Moe & Jack, supra, and need not be repeated here.

Some decisions have refused to apply the general rule of collateral estoppel by judgment to hold a patent invalid if the patentee has evidence on the issue of validity to present in the second case which differs from that before the court in the first case. Aghnides v. Holden, 226 F.2d 949, 950 (7th Cir. 1955); Technograph Printed Circuits, Ltd. v. United States, 372 F.2d 969, 979, 178 Ct.Cl. 543 (1967). See also Technograph Printed Circuits, Ltd. v. Packard Bell Electronics Corp. et al., (C.D.Cal., Aug. 8, 1968), 290 F.Supp. 308.

But with all deference to the Courts which have made "new evidence" the controlling criteria in refusing to apply the doctrine of collateral estoppel to issues decided in a patent infringement action, it would appear conceptually that this test is irrelevant and contrary to controlling precedent in the field of collateral estoppel generally.

■ When res judicata is set up as a bar to a second suit which asserts the same cause of action as was advanced in the first, the judgment in the first suit is binding upon all matters decided, or which might have been decided, in that

---

6. "The circumstance that the final judgment on the issue raised was premised on the failure of the losing party to support its position by sufficient evidence does not impair the binding effect of the judgment rendered." Anselmo v. Hardin, supra, 253 F.2d at 169.

7. "If an issue is raised and the party who has the burden fails in his proof and the issue is decided against him, he is just as much bound by collateral estoppel as though he had presented a barrel of testimony." United States v. Silliman, supra, 167 F.2d at 617.

action. The judgment puts an end to the cause of action, and it cannot be litigated again "upon any ground whatever, absent fraud or some other factor invalidating the judgment." Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1947).

Where the second action between the same parties is upon a different cause of action or demand, the principle of res judicata is applied more narrowly. In this situation the judgment in a prior action effects an estoppel, not as to all matters which might have been litigated and determined, but only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. Commissioner of Internal Revenue v. Sunnen, supra, 333 U.S. at 597–598, 68 S.Ct. 715, 92 L.Ed. 898. Just as when the causes of action in two suits are the same the causes of action cannot be litigated again upon any ground whatever absent fraud or some other factor invalidating the judgment, so, too, all issues determined in the first action should be binding in a different cause of action and should not be allowed to be relitigated upon any ground whatever, absent fraud or some other factor invalidating the judgment in the first action.

A party cannot commence a new suit on the same cause of action on the grounds of new evidence because the cause of action is extinguished by the judgment.[8] Nor should he be permitted to commence a new suit to relitigate an issue on grounds of new evidence. All issues determined in the first action should be binding in the second action regardless of the evidence upor which the first judgment was based, and despite the attempt to introduce new evidence on the issue. The reason for the

res judicata rule where the causes of action are the same is to lay at rest once and for all the cause of action which was litigated. The reason is the same for the rule of collateral estoppel by judgment where the causes of action are different. It is to put an end to litigating an issue after it has been finally decided. The cases of Southern Pac. R. R. Co. v. United States, supra; Last Chance Min. Co. v. Tyler Min. Co., supra; Eller v. Paul Revere Life Ins. Co., supra; United States v. Silliman, supra; Anselmo v. Hardin, supra, among others, support this view.

In Hubbell v. United States, 171 U.S. 203, 18 S.Ct. 828, 43 L.Ed. 136 (1898), a patentee's suit for royalties based on alleged infringement of the patent was dismissed on the ground that there was no infringement. He later sued the same defendant on a different cause of action, again alleging infringement of the patent. The Supreme Court held that the prior judgment was a complete estoppel as to the issue of infringement "even if a somewhat different theory or state of facts were developed upon the trial of the second case." 171 U.S. at 208–209, 18 S.Ct. at 830. See also DuBois v. Philadelphia W. & B. R. Co., 7 Fed.Cas. p. 1140, No. 4,109 (C.C.Md.1871).

Without a rule which prevents the institution of a new suit on the basis of new evidence, issues would never be finally settled. "Doubtless most litigants feel, in the light of hindsight, that, given a second chance, they could present a stronger case." Matthews v. Wolvin, supra, 266 F.2d at 726. The Court said in United States v. Silliman, supra, 167 F.2d at 614:

"Courts have concluded that it is more desirable to bring litigation to an end, once a party has had his day in court,

8. See Restatement, Judgments § 48. "A plaintiff cannot maintain two successive actions against the defendant where he has a single cause of action. The judgment in the first action bars the plaintiff from maintaining a second action based upon the same transaction where the evidence needed to sustain the

second action would have sustained the first action." Restatement, Judgments § 61, comment "b". That a litigant "was unable to turn up all of the details sooner furnishes no legal basis for asserting that the present claim differs from that presented [in the first action]." Matthews v. Wolvin, supra, 266 F.2d at 726.

than it is to allow parties to continue to contest further issues which have been heard and decided with the thought that a previous conclusion can be shown to be untrue and a later one true to the facts."

As the second ground for its decision in the instant case, the Court of Appeals held that it was not timely for it to decide the case since there was pending before Congress certain provisions of the Patent Reform Act of 1967 concerning estoppel against a patentee and judicial review in patent suits. That was more than six months ago. The relevant provisions of the Act have not yet been passed. A decision on the instant case, at least by this Court, appears to be called for at this time.

The motion to dismiss the supplemental complaint will be granted.